EMPLOYERS LIABILITY ASSURANCE COMPANY, Plaintiff, *v.* SUCCE 's UNCLE SAM CONE COMPANY, Defendant.

City Court of the City of New York, March 2, 1925.

Workmen's compensation — insurance — action by plaintiff insurance company to recover premium on policy — policy contained provision that rates of premiums were subject to modification in accordance with rate manual and rating plans established by compensation rating inspection board and approved by Superintendent of Insurance — policy not written in accordance with rate established for risk and approved by Superintendent of Insurance pursuant to Insurance Law, § 67 — indorsement altering rate of premium to conform to proper rate given defendant employer before expiration of policy — parties deemed to have contracted to modification of rate in interest of public policy — judgment for plaintiff.

Plaintiff, an insurance company, is entitled to judgment in an action against the defendant, an employer, to recover a premium on a policy of workmen's com-

pensation insurance, where it appears that the policy issued to the employer contained a provision that the rates of premiums were subject to modification in accordance with the rate manual and rating plans established by the compensation inspection rating board and approved by the Superintendent of Insurance; that plaintiff, upon being notified that the said policy was not written in accordance with the rate established for the risk which it covered and as approved by the Superintendent of Insurance pursuant to section 67 of the Insurance Law, issued and forwarded to the defendant before the expiration of the policy, an indorsement to the policy altering the rate of premium in conformity with the proper rate, since, in the interests of public policy and under the provision of the indorsement that the policy was issued and accepted by the employer with the agreement that rates and premiums were subject to modification, the parties should be held to have contracted with reference to such rate. Moreover, the rate in the policy should be considered merely as tentative.

ACTION by an insurance company against an employer to recover premium on a policy of workmen's compensation insurance.

*Pettigrew, Glenny & Bovard* [*Laurence C. Stryker* of counsel], for the plaintiff.

*H. Rappaport,* for the defendant.

SHIENTAG, J.:

This case was tried without a jury, most of the facts being stipulated. The plaintiff is an insurance company authorized to write workmen's compensation insurance in this State. The defendant is an employer of labor engaged in the business of manufacturing ice cream cones and obliged by law to carry workmen's compensation insurance to cover its employees. On or about June 21, 1921, the plaintiff delivered to the defendant its universal standard workmen's compensation insurance policy for the period of one year from June 21, 1921, to June 21, 1922. An advance premium of $56.50 was paid when the policy was issued. In this policy the risk was classified as No. 6504, manufacturing ice cream cones, with a rate of $1.13 per $100 of wages expended. There was in fact no such classification as manufacturing ice cream cones, Code No. 6504, covering food sundries manufacturing. The policy contained an indorsement (designated WCU 2630, N. Y.), providing as follows: " This policy is issued by the corporation and is accepted by this employer with the agreement that the rates of premium are subject to modification in accordance with the rate manual and rating plans established by the compensation inspection rating board and approved by the Superintendent of Insurance of the State of New York, such modification, if any, to be expressed by indorsement, naming the effective date thereof." It is the duty of the State Superintendent of Insurance, pursuant to section 67 of the Insurance Law (as added by Laws of 1914, chap. 16), to supervise and regulate the classifications of risks and premium rates appli-

**616** EMPLOYERS L. ASSUR. CO. *v.* SUCCESS UNCLE SAM CONE CO.

City Court of New York, March, 1925. [Vol. 124

cable to workmen's compensation insurance written within the State of New York in order to insure uniform, reasonable and adequate rates to be applied to risks covered by workmen's compensation insurance policies. Section 67 of the Insurance Law provides that no classification of risks and premiums relating thereto shall take effect until the Superintendent of Insurance shall have approved the same as adequate for the risks to which they respectively apply. The compensation inspection rating board mentioned in the policy of insurance and the indorsement (WCU 2630, N. Y.) is a rate-making association of the insurance carriers who do a compensation insurance business in the State of New York, and is maintained for the purpose of filing collectively with the Superintendent of Insurance the various classifications of risks and premium rates relating thereto adopted by such insurance carriers, and obtaining approval of premium rates, which rate-making association functions by virtue of authority derived from sections 67 and 141 of the Insurance Law and the Superintendent of Insurance. The compensation inspection rating board, for the purpose of insuring uniform, reasonable and adequate rates, inspects risks and rates them in accordance with certain instruments known as the Manual of Compensation and Liability Insurance or Rate Manual. On March 25, 1921, before the policy in question was issued, the risk in this case had been inspected by the compensation inspection rating board and the classification of the risk determined as Code No. 2000, Bakeries, with a basic rate of $2.18 per $100 of annual wages, which rate was subsequently reduced to $2.099. This classification and rate had been approved by the Superintendent of Insurance. On April 10, 1922, before the expiration of the policy, the compensation inspection rating board notified the plaintiff that the policy was not written in accordance with the rate established for the risk that it covered, and thereafter, on April 13, 1922, the plaintiff issued and forwarded to the defendant an indorsement to be attached to and to form part of the policy, reading as follows: " It is hereby understood and agreed that this risk has been schedule rated and that from date of issue of this policy the classification No. 6504 — manufacturing ice cream cones, and the rate applicable thereto are eliminated and the following classification and rate substituted therefor: No. 2000 — bakeries, $2.099. It is further understood and agreed that the adjustment of premium will be made on this basis." If the insurance company is entitled to recover in accordance with classification No. 2000 — bakeries, at the rate of $2.099 from the date of the issuance of the policy, it should have judgment for $462.98. If, on the other hand, it can recover only according to classification No. 6504 of

food sundries manufacturing, from the date of the issuance of the policy to the date of the indorsement, April 13, 1922, and on the basis of the bakeries rate from that date to the end of the policy, then it should have judgment for $291.78. While the difference in dollars and cents is comparatively small, an important question of public concern is presented in this case. In reaching a conclusion it should be borne in mind that the policy of the State, as expressed in sections 67 and 141 of the Insurance Law, is to remove the matter of rates, premiums and classifications from the field of private bargaining and agreement. Section 67 of the Insurance Law does this by providing that no rates shall take effect until approved by the Superintendent of Insurance, and thus limits the power of the insurance company and the insured to contract on the basis of one rate alone — the rate approved by the Superintendent of Insurance. This policy has a threefold purpose: *First*, to protect injured workmen and the dependents of those killed in industrial accidents by insuring the financial stability of companies writing compensation insurance. This means the maintenance of adequate reserves on the basis of a sound and scientific system of rates carefully supervised by the State. *Secondly*, it has for its purpose the protection of employers against excessive rates, and it is the State's duty to afford this protection because employers for the most part are compelled by law to carry workmen's compensation insurance; they have no choice in the matter, except that certain large employers may under prescribed conditions carry their own insurance. And, *finally*, this policy was designed to guard against rebates, discriminations and favoritism in rates, the effect of which would be harmful to employers as well as to injured workmen. Having in mind these principles and considering the provision of the indorsement that the policy was issued and accepted by the employer with the agreement that rates and premiums were subject to modification in accordance with the rate manual established by the compensation inspection rating board and approved by the Superintendent of Insurance, it seems clear that the parties should be held to have contracted with reference to such rate and that the rate in the policy should be considered as tentative merely. Thus, if the initial rate fixed in the policy was lower than what may be termed the official rate, the insurance company should be entitled to recover on the basis of the higher rate for the period of the policy. If, on the other hand, the rate fixed in the policy was higher than the so-called official rate, the insured should be entitled to the difference from the date of the policy. Any other conclusion would nullify the whole theory under which the workmen's compensation insurance rates are regulated by the State. It would result in a

practice of private rate fixing, in conflict with the provisions of the State Insurance Law. It would render ineffective the language of the statute that classifications of risks and premiums relating thereto shall not take effect until they have been approved by the Superintendent of Insurance. It would encourage a system of rebates and discriminations that would tend to undermine the entire structure of ratemaking. There is no question as to the power of the State to regulate and control insurance rates. (*German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389.) Particularly is this true with respect to workmen's compensation insurance. The theory of the Workmen's Compensation Law was that the burden of industrial accidents should be lifted from the shoulders of the injured workmen and their dependents, who are least able to bear it, and placed upon industry itself. " This act does in fact as well as in theory distribute the burden equitably over the industries affected. It allows compensation only for loss of earning power, but by the creation of a State insurance fund, or by the substitute methods provided, it insures the prompt receipt by the injured employee or his dependents of a certain sum undiminished by the expenses of litigation." (*Matter of Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514.) " Nor can it be deemed arbitrary and unreasonable, from the standpoint of the employee's interest, to supplant a system under which he assumed the entire risk of injury in ordinary cases, and in others had a right to recover an amount more or less speculative upon proving facts of negligence that often were difficult to prove and substitute a system under which in all ordinary cases of accidental injury he is sure of a definite and easily ascertained compensation, not being obliged to assume the entire loss in any case, but in all cases assuming any loss beyond the prescribed scale. (*N. Y. Central R. R. Co.* v. *White*, 243 U. S. 188.) " It will be noted that in both courts certainty of payment to injured workmen is emphasized. It is not only the right of the State but its duty to see to it that the financial stability of insurance carriers is maintained and that a just and adequate system of rates and premiums is established and adhered to. The case is somewhat analogous to that arising under the provision of the Interstate Commerce Act that no carrier shall engage in transportation unless its rates are filed and published, and that no carrier may charge a greater or less compensation for transportation than the rates specified in the tariffs filed. (*Pennsylvania R. R. Co.* v. *Titus*, 216 N. Y. 17; *Central R. R. Co. of N. J.* v. *Mauser*, 241 Penn. St. 603; *Louisville & Nashville R. R. Co.* v. *Maxwell*, 237 U. S. 94.) Judgment is accordingly directed in favor of the plaintiff and against the defendant for the sum of $462.98, together with the costs of the action.