SAM KAPLAN and Another, Plaintiffs, *v.* THE TRAVELERS INSURANCE COMPANY, Defendant.

City Court of New York, New York County, September 11, 1934.

*Benjamin Levin* [*Andrew J. Ewald* of counsel], for the plaintiff.

*William J. Moran* [*Louis P. Galli* and *Bernard J. McGlinn* of counsel], for the defendant.

NOONAN, J.   This action is brought to recover alleged overpayments of premiums under workmen's compensation insurance policies covering a period from 1926 to December 6, 1931.   It is claimed that these overpayments were made under a mutual mistake of fact.

The plaintiffs were engaged in the manufacture of motion picture projecting machines.   The policies under which the premiums in question were paid are standard forms.   Each contains the following provision:

" This policy is issued by the Company and accepted by this Employer subject to the rate manual and rating plans established

by the Compensation Inspection Rating Board and approved by the Superintendent of Insurance, with the agreement that the classification and rates of premium are subject to either correction or modification, or both, in accordance with such rate manual and such rating plans, such correction or modification, if any, to be expressed by endorsement naming the effective date thereof."

The employer was given the classification " 3632 " in each of the policies, that being the code number assigned by the Rating Board to the class described in the respective policies as " Machine Shops — Including Foundry." It was eventually discovered that others engaged in the same work as the plaintiffs were classified under a different code number carrying a lower premium, to wit: " Number 4923 — Photographic Supplies Manufacturing." This fact did not come to light until after all of the policies involved in the present action had expired. On August 12, 1932, the Compensation Inspection Rating Board for the first time changed plaintiffs' classification from " Machine Shops " to " Photographic Supplies Manufacturing " for the policy covering the period from December 6, 1932. All policies subsequent to that date have been written under the latter classification. The Board also reclassified all previous policies running back to December, 1931, and restated the risk, but declined to reclassify the policies under which the premiums involved in this suit were paid.

The basis for the Board's refusal was that such a reclassification would be contrary to one of the rate manual rules prohibiting reclassification when an application therefor has not been submitted during the current term of the policy or within twelve months of its expiration. The application for reclassification of the policies here involved was not made within that time limitation.

Rule 19 of the rate manual rules, in force since 1923, reads: " No applications to change rates on the ground that the risk has not been properly classified shall be considered by the board unless such applications are filed directly with the board by the assured or his representatives or the carrier during the term of the policy and any extension thereof, or within twelve months after the expiration of such policy."

This rule was approved by the Superintendent of Insurance in November, 1923, and has been in effect ever since.

After a hearing had before the Compensation Insurance Rating Board in June, 1933, at which the Board was attended by representatives of the carrier and by counsel for the assured, the latter's application for a reclassification was denied because of the time limitation established by the rule. The minutes of this hearing read in part: " The Committee pointed out that there is no classifica-

tion in the manual which exactly describes the product of this assured, and the assignment of the risk involved the exercise of judgment. The operations of many concerns manufacturing a specialized machine have been assigned to Code 3632, and it is quite possible that a committee of underwriters to whom the question of the proper classification for this risk was presented might divide on the answer. Following the precedent established by the law in civil actions, the board has adopted a short Statute of Limitations which permits consideration of applications to change the classification for a risk if the application is submitted during the current policy term or within twelve months of its expiration. The assured has received the advantage of this rule by a revision of his 1931 rates. If the assured had not slept on his rights and had raised the question of classification earlier with the board either directly or through his insurance representatives, it is possible that the change in classification might have been made before.

"In view of the foregoing circumstances, the committee voted to deny the application to assign Code 4923 to this risk prior to the 1931 policy term."

Denied relief by the Board, the assured then instituted this action at law to recover the difference between the premiums paid under the five policies and the premiums which would have been payable if the risk had been classified under Code 4923.

It is plain that there never was a mistake of fact, mutual or otherwise. As pointed out by the committee, classification of risk involved an element of discretion, and the exercise of judgment by the Board. It cannot be said with certainty even now that the original classification was erroneous. The Board did not, so far as appears, act arbitrarily, and the courts would not at any time have interfered with the exercise of its judgment in good faith. Moreover, public policy and expressed legislative intent both require that the rate and classification fixed by the Board, and unrevised within the time limited by rate manual rule 19, be considered binding upon insurer and assured. Indeed, any other rate or classification, even if stipulated in the policy itself, would necessarily give way before that established by the Board. It would be an anomaly to hold that payments made in strict accord with the rate and classification fixed by the Board, a body invested by law with administrative powers and quasi-judicial powers as well, and concurred in by the insurer and assured, were made under a mistake of fact. If the assured had seasonably solicited a revision by the Board of its classification covering the policies with which this suit is concerned, and if the final determination by the Board of the assured's application for revision had been unfavorable to

the assured, the latter might then have had a remedy in the courts, but solely by certiorari, and only if the Board's determination was an abuse of its discretion and not a proper exercise of its judgment. It is well to note also that the contracts of insurance were expressly made subject to the rate manual and rating plans established by the Board. It was expressly provided in the policies that " the classification and rates of premium are subject to either correction or modification, or both, in accordance with such rate manual and such rating plans." It is fair to say that rate manual rule 19 is thus a part of the contract of insurance, and that the parties made that contract distinctly subject to that rule.

The foregoing conclusions are derived in large part from a consideration of the following: Insurance Law (§§ 67, 141 and 141-b); *Employers' Liability Assurance Corp.* v. *Hayes Construction Co., Inc.* (243 N. Y. 261); *Peabody, Jr., & Co., Inc.,* v. *Travelers Ins. Co.* (240 id. 511); *Employers' Liability Assurance Co.* v. *Success Uncle Sam Cone Co.* (124 Misc. 614).

Plaintiffs' motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted. Let judgment be entered in favor of the defendant dismissing the complaint on the merits. Execution is stayed for five days after service upon plaintiffs' attorney of notice of entry of judgment.

Settle order on notice.