THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., OF LONDON, ENGLAND, (PLAINTIFF), APPELLANT, v. ARTHUR MORGAN TRUCKING COMPANY, A CORPORATION, (DEFENDANT), RESPONDENT.— 156 S. W. (2d) 8.

St. Louis Court of Appeals. Opinion filed December 2, 1941.

Motion for Rehearing Overruled December 16, 1941.

Writ of Certiorari Denied March 10, 1942.

446

*Moser, Marsalek & Dearing* and *J. C. Jaeckel* for appellant.

*Kramer & Chused* and *Simon Reznikoff* for respondent.

BENNICK, C.—This is an action by plaintiff, The Employers' Liability Assurance Corporation, Ltd., of London, England, to recover

additional premiums alleged to be due upon two policies of insurance issued by plaintiff to defendant, Arthur Morgan Trucking Company.

The one of such policies was a workman's compensation and employer's liability policy; the other, a contractor's public liability policy. Each policy covered certain operations of defendant in both Missouri and Illinois.

The case originated in a justice's court in the City of St. Louis upon the filing by plaintiff of a petition in two counts, the first of which related to the workmen's compensation and employer's liability policy, and the second to the contractor's public liability policy. Judgment was prayed in the first count for $623.13 and interest, and in the second count for $23.73 and interest.

During the trial of the case in the circuit court upon the appeal from the justice's court, defendant admitted its indebtedness of the sum prayed for in the second count of the petition, with the result that the court, in the submission of the case, peremptorily instructed the jury to find for plaintiff on the second count of the petition.

The controversy in the case was over the question of the amount due from defendant under the first count of the petition, plaintiff claiming that notwithstanding the lower rate quoted in the policy, it was entitled to recover the whole of the amount prayed for in said count, which represented the amount of the premium upon the workmen's compensation policy computed at the legal rates approved in Missouri and Illinois; while defendant contended that irrespective of what may have been the approved legal rates in the two states in question, it was only obligated to pay a premium computed at the rates originally quoted in the policy issued to it, under which theory it was only indebted to plaintiff in the sum of $5.71 upon the workmen's compensation policy, which sum it expressed itself as being ready and willing to pay.

The issue arising upon the first count of the petition was submitted to the jury, which found for defendant upon the matters in issue, and returned a verdict in plaintiff's favor for only $5.71 with interest, amounting to $8.09. The directed verdict on the second count was in favor of plaintiff for the sum of $23.73 with interest, amounting to $33.54. Judgment was thereupon entered in plaintiff's favor for the aggregate amount of $41.63; and plaintiff, considering itself aggrieved by the alleged inadequacy of its recovery on the first count of the petition, has perfected its appeal to this court in the usual course.

Both policies were issued to become effective on September 23, 1932, with the total premium payable on each policy to be based upon the amount of remuneration earned during the policy period by defendant's employees engaged in the several business operations covered by the respective policies.

In ascertaining the total amount of the premium due upon the workmen's compensation policy, the controversy between the parties was over the question of the proper premium rates to be applied to the wages paid truckmen for services rendered in Missouri and Illinois.

It was undisputed that during the period of the policy, the general truckmen's premium rate approved and issued by the Superintendent of the Insurance Department of the State of Missouri was $5.43 for each $100 of pay roll for truckmen in an insured's employ, which meant that in the case of defendant (an employer engaged in the general hauling business), no insurance carrier was permitted to issue or carry insurance for it at a lower premium rate than that approved and fixed by the general truckmen's classification code, except and unless defendant should qualify for a lower rating by showing a state of circumstances entitling it to a lower classification of risks insured against.

Such circumstances were that where truckmen hauled under contract, whether for one or more individuals or concerns, the pay roll of the employees engaged in hauling under any such contract might be classified and rated at the appropriate classifications and rates for drivers, chauffeurs, and helpers that would be applicable if such employees were engaged directly by the respective individual or concern with which the contract was made, provided that the contract was for a term of not less than one year; that specific trucks and employees were assigned to perform the hauling under the contract, and were used exclusively for that purpose; and that a separate pay roll record was kept for employees engaged in hauling under such contract.

It was plaintiff's theory that the rate applicable to truckmen whose services were performed in Illinois during the period of the policy was $4.77 for each $100 of pay roll. However, the lawfulness of such rate was not shown by evidence as in the case of the Missouri rate, but instead depended for its applicability upon a finding by the jury that such rate was included in the policy or an endorsement thereto at the time the policy was issued. Defendant denied that any such rate had been included or mentioned in the policy or any endorsement thereto at the time of the issuance of the policy; and the question of the proper rate to be applied in computing the premium on so much of the policy as insured against the risks arising in Illinois was therefore a matter for the jury to determine.

The policy, when issued, contained a provision that all the provisions of each workmen's compensation law covered thereby should constitute a part of the contract; and also contained a further provision that inasmuch as the Missouri act forbade the issuance of insurance at premium rates which were less than the rates approved or issued by the superintendent of the insurance department for all insurance carriers or groups of carriers, the policy was therefore issued upon the condition that if the superintendent should require

changes in premium rates or rating plans, such action by the superintendent, if it should affect any premium rate expressed in the policy, should, to that extent, affect a change of such premium rate from and after the date specified by the superintendent in his order requiring such change.

It appears that the policy involved in this proceeding was purchased by defendant upon the suggestion of plaintiff's representatives that they could save defendant some money on its insurance by having it qualify for a lower classification of risks so as to entitle it to a lower premium rating than that approved and fixed by the general truckmen's classification code. Consequently, with a view to exempting defendant from the operation of the general truckmen's classification code, but without having made application to the rating bureau for a special truckmen's rate before the policy was issued, a statement was prepared and included in the policy to the effect that defendant's truckmen were hauling under contract with other specified concerns, in consequence of which it was agreed in the policy that instead of applying the rates of $5.43 and $4.77, respectively, for each $100 of remuneration paid to truckmen engaged in the performance of services in Missouri and Illinois, there should be applied the rates of $1.60 and $1.30, respectively, for each $100 of pay roll of truckmen engaged in hauling under contract in such two states.

In Missouri there is a rating bureau which operates under the supervision of the superintendent of the insurance department, and to which copies of all workmen's compensation policies issued in this State are sent for review as to whether, among other things, the proper premium rates have been applied. If a policy is subject to criticism, the bureau suggests the necessary corrections to be made; and if it is found not to be subject to criticism, it is approved and filed.

Suffice it to say that when the policy involved in this proceeding was submitted to the bureau, the latter ruled that in the absence of an application therefor so that an investigation might be made, defendant had not qualified for the special truckmen's rate which had been quoted in the policy. Such papers as were furnished by defendant purporting to show compliance with the condition that would exempt its truckmen from the operation of the general truckmen's classification code were rejected by the bureau as constituting insufficient proof of qualification for the lower rating, and appropriate criticisms of the policy were made or sent to representatives of both plaintiff and defendant. Subsequent like criticisms were sent out by the bureau from time to time; and finally, acting under compulsion from the bureau, plaintiff prepared an endorsement to the policy undertaking to expunge therefrom the previous endorsement by which defendant had been given the lower premium rating.

At this juncture defendant refused to continue its business dealings with plaintiff, and returned the two policies to plaintiff's general

agent, by whom they were canceled pursuant to written notices to that effect.

Defendant thereupon offered to pay the premiums upon the policies at the lower premium ratings specified therein; and when such offer was refused by plaintiff which insisted upon computation of the premium on the workmen's compensation policy at the rates of $5.43 and $4.77 for each $100 of the pay roll, this action followed to recover the amount of premiums due in excess of defendant's original deposit. The result in the case had already been indicated; and plaintiff's appeal brings up the question of the adequacy of its recovery under count one of the petition in which it sued for the amount due by way of a premium upon the workmen's compensation policy.

The matter in issue in the case is tersely presented by the question of the alleged error of the court in the giving of defendant's instruction No. 2, which was as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff, the Employers' Liability Assurance Corporation, Ltd., sold and issued to the defendant, Arthur Morgan Trucking Company, the policy of workmen's compensation insurance referred to in Count 1 of plaintiff's petition . . ., and under the terms of said policy of insurance agreed to insure the defendant for the premium originally quoted by plaintiff to defendant and originally specified in the said policy of insurance, if you so find; and if you further find that the defendant has fully paid to the plaintiff the amount of premium originally quoted by the plaintiff to the defendant and originally specified in the said policy of insurance, for the period during which said policy of insurance remained in force and effect, with the exception of the sum of $5.71, admitted by defendant to be owing to plaintiff on the said policy of insurance, then, if you so find, you are instructed that the plaintiff is not entitled to recover from the defendant any further payments on said policy of workmen's compensation insurance except the said sum of $5.71."

Quite obviously, if the amount of the premium to be paid upon the workmen's compensation policy was in all events to be determined in accord with the premium rates originally specified in the policy upon the theory that defendant was qualified for such lower premium rating, then the instruction was correct; but if, notwithstanding the lower rates originally quoted and specified in the policy, defendant, upon its failure to qualify for exemption from the application of the general truckmen's classification code, was obligated to pay at the uniform rates approved and issued by the superintendent of the insurance department for every employer engaged in the general hauling business, then the instruction was incorrect, and the court committed error in giving and reading it to the jury.

The mere statement of the two propositions, which embody the ultimate contentions of the respective parties to the case, carriers with it its own conviction of the error inherent in the instruction.

It is provided by Section 3713, Revised Statutes Missouri, 1939 (Mo. Stat. Ann., sec. 3323, p. 8261), that every employer electing to accept the provisions of the Missouri Workmen's Compensation Act shall, unless taking the necessary steps to carry his own liability, insure his entire liability under the act with same insurance carrier authorized to insure such liability in this State.

It is further provided by Section 3716, Revised Statutes Missouri, 1939 (Mo. Stat. Ann., sec. 3326, p. 8263), that every policy of insurance against liability under the act shall be in accordance with the provisions of the act, and shall be in a form approved by the superintendent of the insurance department.

Then follows Section 3717, Revised Statutes Missouri, 1939 (Mo. Stat. Ann., sec. 3327, p. 8263), which has to do with the subject of the making of schedules of rates and classifications of risks, and which, in so far as it is applicable to the issue in the case at bar, contains the following provisions:

"All charges for insurance against liability under this chapter and against the liability of employers rejecting this chapter, shall be fair, reasonable and adequate with due allowances for merit rating. Every insurance carrier or group of carriers authorized to insure against liability under this chapter, shall within thirty days after this section becomes effective, file with the superintendent of the insurance department its classification of risks and premium rates relating thereto with its system of schedule rating (or merit rating so-called), if any. The superintendent then shall hold a hearing to determine upon a uniform classification of risks and premium rates relating thereto, and in his discretion a uniform system of schedule rating (or merit rating so-called). Within sixty days after this section becomes effective the superintendent shall approve or issue as fair, reasonable and adequate for all insurance carriers or groups of carriers, authorized by law to transact liability or compensation insurance business in this State, a uniform classification of risks and premium rates relating thereto, and may in his discretion approve or issue a system of schedule rating (or merit rating so-called) which shall be a uniform system of schedule rating or (merit rating so-called) for all such insurance carriers. The superintendent may subsequently approve or issue a uniform system of schedule rating (or merit rating so-called) for all insurance carriers, or may modify or change any such system previously approved or issued after holding a hearing to determine its effect upon the fairness, reasonableness, adequacy or unfairness, unreasonableness or inadequacy of rates and may approve or issue additional uniform rates and classifications or uniform changes in rates or classifications after holding a hearing to determine upon the fairness, reasonableness, adequacy or unfairness, unreasonableness or inadequacy of such additions or changes. No insurance carrier or group of carriers shall issue, renew or carry insurance

for employers or employees as provided in this section at premium rates which are less than the rates approved or issued by the superintendent for all insurance carriers or groups of carriers as fair, reasonable and adequate for the risk to which they respectively apply . . ."

This section is in turn followed by Section 3720, Revised Statutes, Missouri, 1939 (Mo. Stat. Ann., sec. 3330, p. 8265), which provides that for any violation of the provisions of the act, the superintendent of the insurance department may suspend or revoke the authority of any insurance carrier to do business in this State.

It seems very evident from the nature of the provisions of Section 3717, *supra,* that in respect to the issuance of workmen's compensation insurance—a matter directly affected with a vital interest—it was the intent and purpose of the Legislature to remove the subject of rates, classifications, and the like from the field of private bargaining and agreement to substitute therefor a uniform schedule of rates and classifications for the risks to which they respectively apply, which rates and classifications are neither to be nullified or altered by any private bargaining or contract, nor by any acts or conduct on the part of the insurance carrier in its dealings and relations with the insured employer which might ordinarily constitute the basis for a claim of waiver or estoppel. In other words, the act itself is an integral part of every policy which may be written insuring an employer's liability under the act; and not only is the insurance carrier expressly prohibited from issuing or carrying insurance at premium rates which are less than the rates approved or issued by the superintendent of the insurance department for all insurance carriers or groups of carriers insuring corresponding risks, but employers securing insurance covering their liability under the act are also to be charged with knowledge of the law and of its prohibitions upon the character of insurance that may be issued to them.

Were the situation otherwise, and were insurance carriers to be permitted to indulge in unrestrained competition with respect to the rates at which they were undertaken to assume risks under the act, favoritism, rebates, and discrimination would be the inevitable consequence, with the larger carriers and employers standing to profit at the expense of their smaller competitors; and if the practice were to be generally followed of issuing insurance at rates which were less than fair and adequate for the risks insured against, then adequate reserves could not be built up and the financial stability of insurance carriers maintained so as to effectively secure the protection of injured employees and the dependents of those killed within the coverage of the act. Consequently, the courts, almost without exception, recognize the power of the State, in the exercise of a sound public policy, to regulate and control workmen's compensation insurance rates and classifications; and so it is held that where the State

454

has asserted such power by the enactment of a statute of similar import to Section 3717, *supra,* the rates and classifications approved and fixed by the particular administrative officer or board supersede any contrary contract provisions concerning thè same matters, and alone determine the amount of premium that shall be paid for insurance carried under the act. [Employers' Liability Assurance Corporation v. Success-Uncle Sam Cone Co., 208 N. Y. S. 510, 124 Misc. 614; Employers' Liability Assurance Corporation v. A. A. Electric Co., 305 Ill. App. 209, 27 N. E. (2d) 321; Wisconsin Compensation Rating & Inspection Bureau v. Mortensen, 227 Wis. 335, 277 N. W. 679; Manufacturers Casualty Insurance Co. v. Daison Mfg. Co., 16 Pa. Dist. & Co. 803; Brown & Root v. Traders & General Ins. Co. (Tex. Civ. App.), 135 S. W. (2d) 534; 71 C. J. 911, 912.]

It is not a proper construction of our local statute to say that while it prohibits an insurance carrier from issuing insurance at premium rates which are less than the rates approved or issued by the superintendent of the insurance department, it places no correlative obligation upon the insured employer to pay the lawful rate which is a part of his contract whether mentioned in the policy or not; nor does it suffice to say that the public policy inherent in state regulation and control of workmen's compensation insurance rates and classifications is amply served by the subsequent provision of the act which empowers the superintendent of the insurance department to suspend or revoke the authority of any offending insurance carrier to do business in this State. The primary purpose of the statute is to require the payment of uniform premium rates for corresponding risks and liabilities, and that purpose is not accomplished by merely penalizing the insurance carrier which has undertaken to issue insurance at less than the lawful rate, while at the same time permitting the particular employer to profit by the insurance of his liability at a cheaper rate than was paid by his competitiors whose operations fell within the same general classification.

It follows, therefore, inasmuch as defendant did not qualify for exemption from the application of the general truckmen's classification code, that its Instruction No. 2 was erroneous in restricting its liability to a premium computed upon the lower rating originally specified in the policy upon the theory that it had qualified, or would qualify, for a classification permitting its insurance to be carried at such lower rate.

There is a suggestion in plaintiff's brief that in the event of a reversal of the judgment, we should remand the case with directions to the lower court to enter the judgment to which plaintiff is entitled under the law. This would indeed be a proper course to follow if the only question in the case were that of the correct amount of premium due for the operations covered by the Missouri act. However, as we have already pointed out, a part of the total amount

sued for represents the premium due upon so much of the policy as insured defendant's liability under the Illinonis act; and as to this feature of the case there was a direct issue of fact as to whether the rate of $4.77 for each $100 of pay roll had been included in the policy or any endorsement thereto at the time the policy was issued.

Other matters assigned as error may not appear upon a retrial of the case.

The Commissioner accordingly recommends that for the error noted, the judgment of the circuit court be reversed and the cause remanded with directions that the verdict upon the second count of the petition be held in abeyance until the cause of action set up in the first count is properly determined, at which time a final judgment shall be entered determining all the issues in the case in its entirety.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.