31387.  WALKER *et al.* v. BITUMINOUS CASUALTY CORP.

518

DECIDED OCTOBER 26, 1946.   REHEARING DENIED NOVEMBER 15, 1946.

520

*Charles G. Bruce, R. J. Reynolds Jr.,* for plaintiffs.

*T. Ellon Drake,* for defendant.

SUTTON, P. J. (After stating the foregoing facts.) ■ Every employer who accepts the compensation provisions of the Workmen's Compensation Act is required to insure the payment of compensation to his employees in some corporation or association licensed as provided by law to transact the business of workmen's compensation insurance in this State. Code, §§ 114-601, 114-602. And every policy for the insurance of the compensation provided for under the Workmen's Compensation Act, or against liability therefor, shall be deemed to be made subject to the provisions of said act (Code, § 114-608) ; and the provisions of the act as a matter of law become a part of the contract of insurance as if expressly incorporated therein. *Employers Liability Assurance Corp.* v. *Hunter,* 184 *Ga.* 196 (190 S. E. 598). The Code, § 114-609, provides in part as follows : "The rates charged by all carriers of insurance, including the parties to any mutual, reciprocal, or other plan or scheme for writing insurance against the liability for compensation under this law, shall be fair, reasonable, and adequate, with due allowance for merit rating, and all risks of the same kind and degree of hazard shall be written at the same rate by the same carrier."

The parties to a workmen's-compensation-insurance contract do not have freedom of contract with respect to the rates to be charged

in such contract, but are bound by the rate approved by the Insurance Commissioner for coverage of such a policy or contract. According to the allegations of the petition, the correct rate was charged and paid on the policy here involved from the date of its issuance, November 28, 1939, to March 31, 1942, when the Rating Board and Insurance Commissioner changed certain classifications and rates applicable to certain employees of the plaintiffs, retroactive to January 1, 1942, which resulted in a reduction in the rates of the insureds' contract for the period from January 1, 1942, to August 7, 1944; and the insurer violated the law and the plaintiffs' confidence by failing to reduce the rates charged them, in conformity with the new rates fixed by the Rating Board and approved by the Insurance Commissioner, and failed to inform the plaintiffs of the new rates, but continued to charge and collect from them according to the original rates, and thus overcharged them in the sum of $2192.99, as itemized in an exhibit attached to the petition.

No case has been passed on by this court or our Supreme Court involving the questions of a difference in rates between that fixed by the authority of law and that stated by the parties in a workmen's-compensation-insurance contract. But this question has been passed on in other jurisdictions where the Workmen's Compensation Law is similar to that law in this State. It was held in Employer's Liability Assurance Corporation v. Success-Uncle Sam Cone Co., 124 Misc. 614 (208 N. Y. Supp. 510): "Having in mind these principles, and considering the provisions of the indorsement that the policy was issued and accepted by the employer with the agreement that rates and premiums were subject to modification in accordance with the rate manual established by the compensation inspection rating board and approved by the superintendent of insurance, it seems clear that the parties should be held to have contracted with reference to such rate, and that the rate in the policy should be considered as tentative merely. Thus, if the initial rate fixed in the policy was lower than what may be termed the official rate, the insurance company should be entitled to recover on the basis of the higher rate for the period of the policy. If, on the other hand, the rate fixed in the policy was higher than the so-called official rate, the insured should be entitled to the difference from the date of the policy. Any other conclusion would nullify the whole theory under which the workmen's-compensation-insur-

ance rates are regulated by the State. It would result in a practice of private rate fixing, in conflict with the provisions of the State insurance law. It would render ineffective the language of the statute that classifications of risks and premiums relating thereto shall not take effect until they have been approved by the Superintendent of Insurance. It would encourage a system of rebates and discriminations that would tend to undermine the entire structure of rate-making." See also, to the same effect, Employers' Liability Assurance Corp. v. A. A. Electric Co., 305 Ill. 209 (27 N. E. 2d, 321); Wisconsin Compensation Rating &c. Bureau v. Mortensen, 227 Wis. 335 (277 N. W. 2d, 679); Employers' Liability Assur. Corp. v. Arthur Morgan Trucking Co., 236 Mo. App. 445 (156 S. W. 2d, 8); Brown & Root v. Traders & General Ins. Co. (Tex. Civ. App.) 135 S. W. 2d, 534.

In the recent case of Rice v. Continental Casualty Co., 153 Fed. 2d, 964, where the insured claimed that his occupation had been improperly classified as to the nature of the risk, and that he had been charged and had paid premiums on a workmen's-compensation-insurance policy in excess of those permitted by law, and he sued for the recovery of the alleged overpayment of premiums by him to the insurance company, he was permitted to recover and was awarded a judgment for the amount of the overcharge in such premiums. The court in its opinion, quoting approvingly a ruling of the Texas Civil Court of Appeals in Brown & Root v. Traders & General Ins. Co., supra, said: "The error made by the department in applying a rate can no more give an insurance company the right to a wrong rate than can an error made by a carrier in applying a rate give a shipper the right to a wrong rate."

So we hold that the classifications and rates which were fixed by the Rating Board and approved by the Insurance Commissioner under the provisions of the Workmen's Compensation Law of this State after the policy here involved was issued, and which were applicable to certain employees of these plaintiffs, were binding on the parties in this case, instead of those stated in the policy when it was first issued. Accordingly, if, after the alleged reduction in rates applicable to certain employees of the plaintiffs was made, the defendant continued to charge and collect from the plaintiffs according to the rate stated in the policy, instead of the new rate, the plaintiffs would be entitled to recover from the defendant the overcharge in premiums so paid.

■ But the defendant contends that the amounts sued for were voluntary payments and can not be recovered back, under the voluntary-payment rule contained in the Code, § 20-1007, as follows: "Payments of taxes or other claims made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." We do not think that this case comes within the voluntary-payment rule. According to the allegations of the petition, the plaintiffs did not know of the change in classifications and reduction of rates applicable to their compensation-insurance policy when they paid the overcharge in premiums sued for; but the defendant did know of said change in rates when it charged and collected the illegal rates from the plaintiff, and it did so in violation of the law. The facts were not known by the plaintiffs when the payments were made, and there was no legal liability on them to pay the unlawful premium rate on the policy. But the defendant had such knowledge, and, under the facts alleged, can not in equity and good conscience retain the overcharges in the premiums collected from the plaintiffs.

Also, the defendant insurance company cites the cases of *New York Life Ins. Co.* v. *Williamson*, 53 *Ga. App.* 28 (184 S. E. 755), and *Orient Ins. Co.* v. *Dunlap*, 193 *Ga.* 241 (17 S. E. 2d, 703, 138 A. L. R. 916), and contends that the rulings in those cases are controlling against the plaintiffs in this case on the question of voluntary payments. But an examination of those decisions will disclose that they are distinguishable from the case at bar, and are not applicable or controlling under the facts alleged in this case. It is not deemed necessary to deal with those cases at length, but we will refer to them briefly. The *Williamson* case was one where the insured was entitled to a waiver of certain premiums for total disability, under the terms of his insurance policy, and with a knowledge of all the facts he went ahead and paid the premiums; and it was held that, under the facts of that case, the payments were voluntary and could not be recovered back. In the *Dunlap* case, a necklace was insured for transportation from Germany to

this country, and at the time the policy was issued it was thought by the parties to the contract that the necklace was of genuine pearls and was of the value of $60,000, and it was insured for that amount, but it was later discovered to be a Japanese or cultured-pearl necklace and of the value of only $60. The plaintiff sought to have the insurance policy reformed to cover only the actual value of the necklace and to recover $2430 of the insurance premiums that had been paid. The Supreme Court in that decision said in part: "The petition shows affirmatively that whatever may have been the real extent of the risk under the law and the actual facts, the insurance company was exposed to an apparent risk comparable, at the agreed rate, with the amount of the premium paid, and might have been subjected to liability accordingly, if the article had been lost. In these circumstances it would be inequitable for the plaintiff now to recover, as for money had and received, the greater portion of the premium paid."

Under the facts alleged, the plaintiffs are not precluded from recovering the overpayments in the premiums sued for under the voluntary-payment rule.

■ The petition set out a cause of action for the alleged unlawful overcharges in the premiums sued for, and the trial judge erred in sustaining the general demurrer to the petition and in dismissing the action.

*Judgment reversed. Felton and Parker, JJ., concur.*