COMMISSIONERS OF THE STATE INSURANCE FUND, Plaintiffs, *v.* MASCALI-ROBKE COMPANY, INC., Defendant.

Supreme Court, Special Term, New York County, February 10, 1955.

*Bernard Katzen, Harry Schechter* and *William H. Stieglitz* for plaintiffs.

*David Stein* for defendant.

ISIDOR WASSERVOGEL, Special Referee. Plaintiffs seek to recover the sum of $4,912.19, which allegedly represents the balance of premiums due plaintiffs from defendant pursuant to the provisions of a workmen's compensation insurance policy which was duly issued to defendants on or about July 2, 1943.

Defendant is a parent corporation for several business ventures which were referred to during the trial of this action as the " Mascali Enterprises." Defendant hired labor and supplied the payroll for all the companies which comprised the " Mascali Enterprises " throughout the period here involved. On or about July 1, 1943, defendant, by written application, applied to plaintiffs (hereinafter referred to as the " Fund ") for a policy of workmen's compensation insurance. The Fund issued such policy to defendant on July 2, 1943. This insurance contract, like all workmen's compensation insurance policies issued by the State Insurance Fund, was a continuing one from the date of its issuance until its cancellation. The premiums sought to be recovered here are encompassed within the renewal periods of July 2, 1950, to July 2, 1951, and July 2, 1951, to March 7, 1952, the terminal date of the policy for nonpayment of premiums.

The amount of the premiums which the Fund seeks to recover in this action is allegedly based on regular audits of the books and payroll records of defendant, which audits were made by auditors in the employ of the Fund. These auditors, in accordance with adopted procedure, fixed different classifications for different types of work performed by defendant's help. The classifications, in effect, determine the rate of premium which defendant must pay for its policy of workmen's compensation insurance, as set forth in a rate manual adopted by the State Insurance Fund. It is defendant's contention that the Fund's auditors, in many instances, arbitrarily and without any basis,

assigned higher classifications and ratings to certain operations which should have been given lower premium rates, with the result that the defendant has allegedly overpaid its insurance premiums to the Fund.

It is significant that defendant's policy contract contains the following provision: " Seven: This policy is accepted by the employer subject to the manual rules, classifications, rating plans and rates adopted by The State Insurance Fund and also subject to annual revision in accordance with such rules, classifications, rating plans and rates, *with the agreement that the classification, rates and premiums are subject to either change, correction, or modification, in accordance with such manual rules, classifications, rating plans and rates.*" (Italics supplied.)

The " manual " referred to in the foregoing provision of the workmen's compensation insurance policy is one which has been adopted by the State Insurance Fund as a member of the Compensation Insurance Rating Board. The State Insurance Fund has been a member of the Compensation Insurance Rating Board (hereinafter referred to as the " Board ") for more than thirty-five years (*Sadigur* v. *State of New York,* 267 App. Div. 59, 62). The Board, which was organized pursuant to section 181 of the Insurance Law, is a rate-making association of insurance carriers in the compensation insurance business in the State of New York and is maintained for the purpose of filing, collectively, with the Superintendent of Insurance the various classifications of risks and premium rates relating thereto, adopted by such insurance carriers. The Board, for the purpose of fixing uniform, reasonable and adequate rates, provides for the inspection of risks and rates them in accordance with certain instruments known as the " Manual of Compensation and Liability Insurance " or " Rate Manual " (*Employers' Liability Assur. Co.* v. *Success Uncle Sam Cone Co.,* 124 Misc. 614, 616; *Skating Vanities Co.* v. *State of New York,* 203 Misc. 779, 785).

Though the State Insurance Fund is expressly exempted from the rate-making and regulatory provisions of section 181 of the Insurance Law, it has nevertheless voluntarily been a member of the Board for many years, as above noted. Thus, while the right and obligation to fix rates to be charged an assured remains in the Fund, it has determined these rates upon information furnished by the Board, thereby, in effect, adopting the rate schedules as found by this actuarial or fact-finding agency (*Sadigur* v. *State of New York, supra; Skating Vanities Co.* v. *State of New York, supra,* pp. 785–786). By accepting the policy contract here involved subject to the rate manual adopted by

the State Insurance Fund as a voluntary member of the Board, defendant, in effect, by virtue of paragraph " Seven " of its policy of insurance (*supra*), accepted such manual by reference and incorporation and is, therefore, bound by all of the rules set forth therein. (*Employers' Liability Assur. Corp.* v. *Hayes Constr. Co.;* 243 N. Y. 261, 264–265.)

Subdivision d of rule 6 of the manual, effective during the policy periods in question, and which is an alleged defense to this action, provides as follows:

" 6. The entire remuneration shall be used as the basis of premium, except as provided below:　*　*　*

" d. If the employer's books and records are maintained so as to show separately, by employee and in summary by class of work, the total remuneration earned by all employees whose individual average weekly remuneration for the total time employed during the policy period exceeds $100 per week (a part of a week to be considered as a full week) after any deductions are made in accordance with subdivision c of this rule there shall be excluded  from the remuneration upon which the final policy is based that part of such remuneration of each employee which is in excess of such average."

Defendant contends that the Fund, in addition to assigning erroneous classifications to its payrolls, failed to give it credit for those employees who earned an average of over $100 per week during the audit period, as set forth in subdivision d of rule 6 (*supra*). It is the Fund's contention, however, that defendant did not maintain its books and records in accordance with the requirements of the manual of rules.  Such rules, the Fund argues, require an employer to specifically indicate the various types of work done by its employees.  By failing to do so, the Fund contends, plaintiff comes within the provisions of subdivision f of rule 10, which provides as follows: " Payroll must not be divided on an estimated or percentage basis.  If separate records of payroll are not kept for operations which otherwise would be divided between two classifications, *the entire amount of such payroll must be assigned to the classification carrying the highest rate.*"　(Italics supplied.)

It is the Fund's contention that in view of the foregoing rule, defendant's alleged method of keeping its books and records justified the Fund's action in assigning to defendant's payroll the highest rate of classification, to wit, " 5506 — Street or Road Construction."  It is also the Fund's contention that the failure of defendant to maintain its books and records in accordance with the procedure prescribed by the adopted manual forfeited

its right to a reduction of the premium rate in accordance with the provisions of subdivision d of rule 6 (*supra*).

Contrary to defendant's contention and regardless of the merits of its defenses, the question of improper classification of payroll is not one which the court may consider collaterally, by way of defense or otherwise, in an action by an insurance carrier to recover workmen's compensation insurance premiums (*American Mut. Liability Ins. Co.* v. *Velletri Constr. Corp.*, 282 App. Div. 500, 501; *Employers' Liability Assur. Corp.* v. *Hayes Constr. Co., supra*; *Employers' Liability Assur. Co.* v. *Success Uncle Sam Cone Co., supra*). Rule 3 of the "Rules and Procedure," as set forth in the adopted manual, states, in substance, that no application to change classification or rates on the ground that: "the risk has been improperly classified or rates shall be considered by the Board *unless such application is filed directly with the Board by the assured or his representative or by the carrier during the rating term with respect to which the application is made or within twelve months after the expiration thereof*." (Italics supplied.)

Subdivision (2) of rule (F) of the "Rules and Procedure" further provides that: "*Complaints*. Complaints of improper underwriting shall be investigated by the Board, provided the complainant has submitted a statement of facts in writing, * * * and details of the complaint."

Thus, it clearly appears from the foregoing rules that if defendant felt aggrieved by the classifications assigned to its payrolls, it had its remedy of applying directly to the Board for a revision thereof by filing a complaint within the time limitation set forth in the manual. This it did not do.

As above-noted, the contract of insurance here involved was *specifically* made subject to the manual adopted by the State Insurance Fund and the rules and methods of revision set forth therein. Public policy and expressed legislative intent require that the rate and classification fixed by the Board, a body invested by law with administrative and quasi-judicial powers, be deemed binding upon insurer and assured unless revised within the time limitation and in accordance with the relevant rules and procedure set forth in the Board's manual (*Kaplan* v. *Travelers Ins. Co.*, 152 Misc. 825, 827–828; *Commissioners of State Ins. Fund* v. *Blank*, 205 Misc. 322, 323; *Andrews* v. *Goodman*, 160 Misc. 664, 666, affd. N. Y. L. J., Nov. 5, 1938, p. 1498, col. 7; *Kaplan* v. *Travelers Ins. Co.*, 149 Misc. 860, 861; Insurance Law, art. 8, § 180 *et seq.*). It would be anomalous for this court to hold, as urged by defendant, that the classifications and rates

fixed by the Fund, in strict accord with the manual of rules which contractually govern both parties to this action, are not binding upon the defendant despite the latter's failure to abide by the procedure for review as expressly set forth in such manual.

Contrary to defendant's contention, this court may not consider the equities, if any, which exist between the parties. This is an action at law. If defendant had timely sought a revision of its classifications with which this lawsuit is concerned, in compliance with the rules and procedure set forth in the manual, and if it was thereafter dissatisfied with the final determination of the reviewing board, defendant might then have had a remedy in a court of equity pursuant to the provisions of article 78 of the Civil Practice Act. This court may not now, in effect, afford defendant the relief which it may have been entitled to had it adopted the required procedure.

The record establishes that defendant's payroll records did not comply with the requirements of the manual of rules " so as to show separately, by employee and in summary by class of work, the total remuneration earned by all employees whose individual average weekly remuneration for the total time employed during the policy period exceeds $100 per week " (rule 6, subd. d, *supra*). Defendant's Exhibit B, prepared by the witness Fischer, which sets forth the specific information required by subdivision d of rule 6, must be deemed a belated attempt to comply with this rule long after the defendant's policy was cancelled and this action instituted to recover the premiums then due. In the opinion of the court, the benefits conferred by rule 6d are subject to the condition that the employer maintain his books and records during the audit period to which they apply in the manner specified therein. Consequently, if they were not so maintained during such period, or if they are revised after the audit has been made by the Fund, an employer is not entitled to any exclusions for the policy period in question. It is evident from the language of the rule that this principle was adopted in an effort to encourage employers to maintain their books and records in a particular manner for inspection by auditors of the Fund. The benefits conferred by such section are conditioned solely upon compliance with this requirement. It is significant that subdivision d of rule 6 has been so interpreted by the Board itself. (See Compensation Ins. Rating Bd. Memorandum, H. O. 1168, PA–70, dated March 18, 1952.) Even if the court's interpretation of rule 6d were different than that of the Board, in the absence of proof that the rule and the Board's

interpretation thereof was an unreasonable exercise of an administrative function, this court could not substitute its judgment for that of an administrative agency which, in effect, is performing a quasi-judicial function.

It necessarily follows that plaintiff is entitled to recover from defendant the amount prayed for in its complaint, less the sum of $91.61, which represents premiums for the " United Nations Job " which plaintiffs, upon the trial of this action, conceded that defendant was entitled to as a credit.

Accordingly, judgment is rendered for plaintiffs for the sum of $4,820.58, with interest thereon from March 7, 1952.

Defendant may have a twenty days' stay of execution.

The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.