WISCONSIN COMPENSATION RATING & INSPECTION BUREAU and another, Respondents, vs. MORTENSEN, Commissioner of Insurance, and another, Appellants.

*January 14—April 12, 1938.*

For the appellants there were briefs by the *Attorney General,* and *Mortimer Levitan,* assistant attorney general, attorneys for H. J. Mortensen, commissioner of insurance, and *Wood, Warner & Tyrrell* of Milwaukee, attorneys for the Motor Castings Company, and oral argument by *Mr. Jackson M. Bruce* of Milwaukee, *Mr. Edgar L. Wood,* and *Mr. Levitan.*

For the respondents there were briefs by *Otjen & Otjen,* attorneys for the Wisconsin Compensation Rating & Inspection Bureau, and *C. J. Otjen* of counsel, and by *Quarles, Spence & Quarles,* attorneys for the Employers Mutual Liability Insurance Company, and oral argument by *Mr. C. J. Otjen* and *Mr. Kenneth Grubb,* all of Milwaukee.

Briefs were also filed by *R. M. Stroud,* attorney for the Wisconsin Manufacturers Association, and *Olin & Butler* of counsel, all of Madison, and by *Joseph A. Padway* of Milwaukee, as *amici curiæ.*

The following opinion was filed February 15, 1938:

Rosenberry, C. J. The questions raised in this case require us to consider and interpret certain provisions of ch. 205, Stats., entitled "Insurance—Workmen's Compensation."

Sec. 205.06 (1), Stats., provides: "This chapter shall be administered and enforced by the commissioner of insurance. In approving classifications, pure premiums, or rates, the commissioner shall in all cases consult with the industrial commission or some member of this commission designated

by it. The commissioner may also consult with the industrial commission or its representative on any other matter arising under this chapter and he shall have access to all records of the industrial commission which he may wish to consult in the performance of his duties under this chapter."

Sec. 205.08 (1) provides: "The commissioner may at any time require a survey and report by the bureau of any risk regarding which complaint has been made. Approval of any rate or classification may be withdrawn upon ten days' notice to the parties interested. Rates or systems of schedule or merit rating shall not take into account the physical impairment of employees.

"(2) The commissioner may, on a proper showing relating to any employer, make an experience rate for such employer on a plan which shall be uniform for all insured in the same class, and may modify or revoke such rate as the facts may warrant. No such rate or modification thereof shall take effect until thirty days after the compensation insurance board shall have given notice thereof to each rating bureau rating workmen's compensation risks in this state, and to each insurer effecting insurance upon workmen's compensation risks in this state."

Sec. 205.09 provides: "No classification for compensation insurance purposes shall be effective until approved by the commissioner. . . ."

Sec. 205.11 (1) provides: "The commissioner may upon his own motion or upon the verified complaint of any person having a direct interest, to review the acts of any company, bureau or agent, subject to the provisions of this chapter, and after a hearing make findings and orders requiring compliance with the provisions thereof. A copy of such complaint shall be served upon the company, bureau or person against whom the complaint is directed, and each of the parties in interest shall be entitled to ten days' notice of any hearing pursuant to this section. Examination of any bureau shall be at its expense."

The questions presented for decision in this case are:

(1) Upon the establishment of a plan of experience rating, does the statute require that in the formulation of an

experience-rate plan credits shall be allowed but no debit charges shall be made?

(2) Has the commissioner of insurance, pursuant to the powers given him by ch. 205, Stats., the power to make a rate retroactive, and to require the insurance carrier to refund to the insured any sums charged by it in excess of the rate then established?

It is conceded that the commissioner may withdraw his approval, make a revision of a rate, and make such orders as circumstances warrant, provided they are prospective in operation and are in compliance with the statute.

(3) Has the commissioner of insurance, under the provisions of ch. 205, Stats., the power to require the Rating Bureau to disregard as a part of the insured's experience those losses established by way of settlement and approved by the industrial commission in accordance with the provisions of the Workmen's Compensation Act?

## I.

The statute does not in terms define "experience rating." The commissioner was of the view that the term does not include "charges," and deduced his conclusion from the provisions of sec. 205.08 (3), which provides:

"Any employer who shall apply or promote any oppressive plan of physical examination and rejection of employees or applicants for employment shall forfeit the right to the advantages of experience rating. . . ."

In his letter of transmittal the commissioner said:

"In my judgment, that section [205.08] provides for credits only, and prescribes a method whereby such credits or advantages of experience rating may be forfeited and the forfeited advantages regained by a like procedure."

It is considered that this position is not well taken. In response to the demands made upon the legislature by organ-

ized labor, sub. (3) was enacted to prevent employers from gaining advantages by an oppressive plan of physical examination. The principal object of employers in having an "oppressive plan of physical examination" would be to have a more favorable experience due to the fact that they had by this means secured a group of employees who were above the average, in which event the employer would in all probability gain a credit or advantage. If an employer promoted such a plan, a method of depriving him of the consequent advantage was prescribed. The subsection provides:

". . . If the industrial commission shall find that grounds exist for such forfeiture it shall file with the commissioner a certified copy of its findings, and such filing shall automatically suspend any experience rating credit which may accrue to such employer. . . ."

It is true that the statute operates to suspend not only the advantage due to the oppressive plan of physical examination, but all other advantages as well. However, there are other provisions of the section that are material in this connection.

Sec. 205.12 (1) provides: "Every company shall be a member of a bureau to be maintained in this state for the following purposes:

"(1) To arrange the industries of this state into classes for compensation insurance; to make inspections of compensation risks and to apply thereto the schedule or merit rating system; to establish *charges and credits* under such system, and to make reports showing all facts affecting such risks."

Sec. 205.18 provides: ". . . It [the bureau] shall file with the commissioner its classification of risks and the written surveys of all risks inspected by it, showing *charges and credits,* and such other facts as are material in the writing of insurance thereon. . . ."

Sec. 205.20 provides: "No company shall make or charge any rate . . . which discriminates unfairly between risks

in the application of like *charges and credits* in the plan of schedule or merit rating in use. . . ."

Used as this language is, with reference to schedule or merit rating, we reach the conclusion that an experience-rating plan should include charges as well as credits. Whether or not the plan on the whole results in an advantage to a particular insured will depend upon his experience. The defendants argue that these sections refer only to the schedules applied to plant and physical features and not to loss experience. We see no ground upon which such a construction can be based because schedule or merit rating, as will hereafter appear, includes "experience rating."

Upon the trial much expert evidence was offered to establish the meaning of the term "experience rating," as used in the amendment of 1925. The commissioner of insurance was of the view that the weight of this evidence indicates that the plan might properly provide for charges as well as credit items, but he did not adopt that view because he considered that the statute forbade him to do so.

Hon. Fred M. Wilcox, former chairman of the industrial commission, testified :

"Experience rating is a system of credits and debits intended to put upon an employer that additional responsibility which his failure of care and caution occasions, or his experience of his plant occasions, and give him a debit. for his failure, and to give that other employer who does look after it a credit. Experience rating is, after all, the finest type of encouragement to accident and disease prevention. That is its purpose and the balancing up of liability."

The conclusion arrived at by Mr. Wilcox is sustained by all of the definitions cited to our attention. The commissioner was furthermore of the view that schedule rating and merit rating were synonymous terms. It appears quite clearly from the expert evidence offered upon the subject that merit rating includes experience rating. That such was

the legislative understanding is indicated by the fact that as the statute stood prior to 1925, sec. 205.08 (1) provided:

"Premium rates or systems of schedule or merit rating shall not take into account the physical impairment of employees or experience rating."

The use of the term "experience rating" in this connection operated to exclude experience rating from the term "schedule or merit rating." This is further indicated by the fact that when the section was amended in 1925 for the express purpose of having the chapter include experience rating, the words "or experience rating" were stricken out. Thereafter the section only prohibited taking into account the physical impairment of employees and experience rating might thereafter be taken into account. Putting the words in subtracted experience rating from schedule or merit rating. Striking them out left schedule or merit rating with its original meaning according to the authorities on experience rating.

This conclusion is fortified by a comparison of Bill No. 400, S., 1925 (amending certain sections of ch. 205, Stats.), as introduced and the law as finally enacted. In the bill as introduced there was used the following phrase "schedule or merit rating and a system of experience rating." This phrase was found in secs. 205.07, 205.08, 205.12 (1), 205.18, 205.20, and 205.24 of the bill. As enacted, the phrase "schedule or merit rating and a system of experience rating" was reduced to "schedule or merit rating," which very strongly indicates that as understood by the legislature the term "schedule or merit rating" includes a system of experience rating. As finally enacted (ch. 399, Laws of 1925), the bill amends only secs. 205.08 and 205.12 (2), the legislature evidently being of the opinion that it was not necessary to amend the other sections which already referred to schedule or merit rating in order that an experience-rating

plan might be included in those sections omitted from the bill as it was finally passed.

We conclude, therefore, that the commissioner was in error in holding that a plan for experience rating should not include charges as well as credits. If that construction was adopted, it would mean that the insured would be given credit for the precautions he took, but would not be charged with the responsibility for failure to take precautions. In order to have his total experience the precautions which he took should be measured against his failure to take precautions. It is further considered that the term "schedule or merit rating," as used in the chapter after the amendment of 1925, includes a plan of experience rating.

## II and III.

The commissioner was of the view that he could, under the power conferred by sec. 205.08 (2), direct a rate to be made upon the petition of an insured which would apply only to the petitioner and require it to be applied retroactively. Sec. 205.07 confers upon the commissioner wide powers with respect to the making of prospective rates. Under the provisions of that section he must approve all rates. Apparently one of the principal concerns of the legislature was that in the competition for business compensation insurance carriers should not reduce themselves to a state of insolvency. This section provides:

". . . The commissioner shall, after consultation with companies, approve a system of schedule or merit rating for use in this state. No system except the one so approved shall be used. . . ."

Sec. 205.08 (2) limits the power of the commissioner. It provides:

"The commissioner may, on a proper showing relating to any employer, make an experience rate for such employer on a plan which shall be uniform for all insured in the same

class, and may modify or revoke such rate as the facts may warrant. . . ."

While the commissioner is authorized to make an experience rate relating to any employer, when the plan is made·it becomes uniform and applies to all those who are insured in the same class. The commissioner may not in the exercise of the power conferred make one plan for one employer and modify it for another. He may approve a plan, which plan may be applied to the experience of a particular insured. The application of that plan may result by reason of the system of debits and credits in one insurer being charged one rate and another another, but the plan is uniform. The rate deduced is the result of the application of the plan. The rate of each insured is the same as that of every other insured having the same experience. Under the statute the commissioner of insurance or his predecessors in office have been required to approve and have approved each and all of the various plans which have been adopted since 1925 and all modifications thereof.

In order to determine whether or not the commissioner acted without and in excess of his powers, it is necessary to set forth as briefly as possible some facts in regard to the rate-making process. The policy of compensation insurance in force at the time the petition to the commissioner was filed was effective June 22, 1934, to June 22, 1935, and provides:

"The classifications, rates and premiums indicated in this policy or in any indorsement hereto are subject to modification in accordance with the rate manual and rating plan established by the Wisconsin Compensation Rating and Inspection Bureau and approved by the Wisconsin Insurance Department; such modification, if any, to be expressed by an indorsement stating the effective date thereof."

The manual of rates then effective is applied to produce the final rate. The effective manual rate on June 22, 1934,

was 3.98. This includes the pure-premium rate referred to in sec. 205.07, plus the expense loading. On the basis of an inspection made in accordance with the manual of rates, the schedule off-balance rate was found to be 1.083 which produced a rate of 4.31. The schedule adjusted rate was found to be 4.15. Using the formula prescribed by the manual of rates, the experience-modification factor was found to be 2.246. This produced the so-called experience rate of 9.32. To this was added occupational-disease-schedule findings which produced a final rate of 10.32. The so-called "Silicotic Amendment" was adopted in March, 1935, which reduced the experience modification to 1.768 and produced a final rate of 8.05. Premium payments for the policy year were adjusted accordingly. In determining the experience modification the manual of rates provided that "incurred losses, paid and outstanding, shall be tabulated by policy years." The manual also provided that in the case of the Motor Castings Company the losses experienced for the first five years of the previous six years should be taken. It further provided:

" 'Weights' of 1.00, 1.00, .80, .60 and .40 are applicable in the order named, to both the pay rolls and the losses of the respective policy years beginning with the latest and ending with the earliest policy year of the experience period."

The Motor Castings Company had made reports of the losses as set out in the statement of facts. These losses were included in determining the experience-modification factor. What the commissioner of insurance attempted to do was to strike these reported losses from the experience of the Motor Castings Company on the ground that as a matter of fact no liability existed. It is apparent that when an insurer makes a contract of insurance, such as the one under consideration, the plan becomes an effective part of the contract, and the amount of the final premium to be paid by an in-

sured is to be determined in accordance with the plan in effect at the beginning of the policy year. Neither the statute nor the contract provides, that the commissioner may revise the plan and make it retroactive to the beginning of the policy year. The plan having provided that "incurred losses paid and outstanding" shall be taken as the basis for computing the experience modification, the question then arises— Were the losses as reported incurred losses? If they were incurred losses, the commissioner was without authority under the statute to strike them out and require them to be eliminated in the computation of the experience-modification rate. The Motor Castings Company had been given the benefit of the readjusted rate which was made on the basis of the determination that there was no liability in the Lester and Skrzcezkowski cases. The conditions under which the claims of the other employees had arisen have already been set out. When a claim was made and settlement was agreed upon, it was duly submitted to the industrial commission, approved by it, and an award made in accordance with the provisions of the Workmen's Compensation Act. Sec. 102.16 (1). After the expiration of one year a settlement so approved is final. *Hotel Martin Co. v. Industrial Comm.* (1923) 182 Wis. 79, 195 N. W. 865. Under the provisions of the act, either party may without notice cause a judgment to be entered in the circuit court of the proper county which can then be enforced as a judgment of that court in any other action. Sec. 102.20. An award is the practical legal equivalent of a judgment because it may without notice be converted into one. An unreversed judgment is uniformly held to establish liability with finality.

Prior to the time that these claims were made against the Motor Castings Company for compensation, two cases had been decided in this court: *Kannenberg Granite Co. v. Industrial Comm.* (1933) 212 Wis. 651, 250 N. W. 821,

and *Michigan Quartz Silica Co. v. Industrial Comm.* (1934) 214 Wis. 492, 253 N. W. 167, and it was contended that under these decisions the claimants were entitled to compensation. On the basis of that contention the insurer paid the amount set out in the statement of facts in settlement of these claims, each of the settlements being as already stated duly approved by the industrial commission. It is the contention of the commissioner that under the doctrine laid down in *North End Foundry Co. v. Industrial Comm.* (1935) 217 Wis. 363, 258 N. W. 439, there was no liability, and for that reason the amounts paid in settlement of these claims should not be considered in establishing the experience-modification factor under the plan. We find nowhere in the statute any provision authorizing the commissioner of insurance to review the determinations made by the industrial commission or to attack them collaterally. No contention is made that the settlements were the result of fraud or collusion, or that they were anything other than settlements made in good faith. Not only was the commissioner without authority to review the determination of the industrial commission, but the payment of these claims certainly amounted to an incurred loss paid. The plan approved by the commissioner having provided that "incurred losses paid and outstanding" should be considered in determining the experience-modification factor, the commissioner was without authority during the period of the contract to modify its terms and make the plan as modified applicable to the entire policy year. The manual governing at the time the contract was entered into provided:

"It is not permissible to revise values and make rate changes on the basis of departmental and judicial decisions made subsequent to the date of valuation, except in subrogation cases where recovery is actually obtained."

It was further provided: "Where a final award has been made prior to the date of experience valuation, it is not proper to include in the experience application an amount

greater than the actual loss incurred as shown by such award."

It was further provided: "An experience modification once developed shall be effective for a period of twelve (12) months (except as provided in rule 10f), and during that period, shall be applicable to all the operations of the risk, regardless of whether the current or any new operations are assigned to the same classifications as were used in establishing such modification."

(10f) provides: "The experience-rating modification determined for renewal on the normal expiration date shall be effective throughout the full term of any policy issued on such renewal date or within three months thereafter. . . ."

These provisions of the plan, which plan was approved by the commissioner, preclude any reconsideration of incurred losses except as provided in the plan. If a sum set up for reserve in a particular case is greater than the amount of the award actually made, then the award shall be taken and the rules above set out are to be applied in appropriate circumstances. There is no claim made in this case that the Rating Bureau failed to correct any and all errors called to its attention. It is not contended that the plan was not properly applied to the experience of the Motor Castings Company as reported, nor is there any claim that mistakes of fact were made in the making of these reports. The sole contention being that under the *North End Foundry Case* there being in fact no liability that the sums paid in settlement of the claims made should not be considered; that the claims settled and paid were not in fact incurred losses. It is considered that this contention is not well taken. The award of the industrial commission being equivalent to a judgment, liability was fixed, and it was certainly an incurred loss outstanding until it was paid, and it has in fact been paid.

We conclude that under the statute, for the reasons stated, the commissioner has no power to make a rate retroactive and to require the insurance carrier to refund to the insured

any sums paid to it by the insurer in excess of the rate then established.

It is considered further that the commissioner, under the provisions of ch. 205, Stats., acted without and in excess of his powers in ordering the Rating Bureau to disregard as a part of the insured's loss experience established by way of settlement and approved by the industrial commission in accordance with the provisions of the Workmen's Compensation Act.

No doubt a sound public policy moved the commissioner to provide in the plan for the inclusion of incurred losses paid or outstanding for the very purpose of encouraging employers to make settlements with their employees. If insurance carriers cannot be certain that losses thus established and paid by them are to be considered in the loss experience of the insured, settlements will be discouraged and the parties put to the expense of unnecessary litigation.

This case presents a very unusual set of facts, and one not likely to be repeated in the experience of insurance carriers. Modifications of the law relating to occupational diseases, particularly silicosis, have cleared up many of the difficulties which were formerly encountered in the administration of the act. For the reasons stated, the judgment appealed from must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 12, 1938.