167 P.2d 925

BARRON et al. v. AMBORT et al.

No. 4880.

Supreme Court of Arizona.

April 8, 1946.

Westover & Mansfield, of Yuma, and Minne & Sorenson and Geo. T. Wilson, both of Phœnix, for petitioner.

H. S. McCluskey, of Phœnix (John R. Franks, of Phœnix, of counsel), for respondents.

MORGAN, Judge.

On June 20, 1940, one Russell Harding met with an accident while in the employ of the individual defendants doing business as Sunland Dairy. The commission was the insurance carrier for the employers. As a result of the injury received, the employee died. He had been working for the dairy company for more than one month, under an oral contract of hire guaranteeing a wage of $75 per month, plus 4% commission on all sales. His earnings or wages for the month mounted to the sum of $331.56, including the $75 and 4% commissions.

The deceased left surviving him a dependent child, James Russell Harding, nearly seven years of age. Claim was duly made, on behalf of the minor, by his guardian. The evidence before the commission indicated that $75 per month was approximately 20% of the wages received by employees for similar work, all of whom were employed and paid under a like contract system. No evidence was, nor could be, introduced before the commission showing wages paid for similar work to employees not under contract.

The commission, being under the impression that the opinion of this court in Kennecott Copper Corp. v. Industrial Commission and Jaime, 61 Ariz. 387, 149 P.2d 687, construing the last sentence of section 56-952, A.C.A.1939, required them to limit the amount of the award to the guaranteed wage, made an allowance based on $75 per month.

The petitioner has appealed to this court, asking that the award be set aside, and that in lieu thereof the award be based on the average monthly wage or earnings of $331.56.

The commission's only contention is that the award must be affirmed unless we shall disaffirm or distinguish the Kennecott-Jaime case, supra.

While it is our view that the Kennecott decision has no application to the situation here, this is not to be taken as a criticism of the commission's reliance thereon. The language of the court, in construing section 56-952, supra, must be considered in the light of the facts in that case. There the guaranteed wage, which was being considered, was not less than the wages paid for similar work to employees not under contract.

The purpose and intent of the Workmen's Compensation Act, Code 1939, § 56-901 et seq., is that compensation shall

be based on average monthly wage or earning capacity. We had occasion, in the recent case of Wells v. Industrial Comm., 63 Ariz. 264, 161 P.2d 113, 115, to discuss this phase of the compensation law, and particularly the provisions of section 56-952, exclusive of the last sentence thereof. We called attention to the provisions of that section requiring that compensation be "fixed on the basis of average monthly wage", and that "The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured." We pointed out that where the employee had not been continuously employed for thirty days preceding the accident, then the law provides, "the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident."

The Workmen's Compensation Act is remedial in character and it must be given a liberal construction to accomplish its intended purposes. Butler v. Industrial Comm., 50 Ariz. 516, 73 P.2d 703; Wells v. Industrial Comm., supra; Federal Mut. L. Ins. Co. v. Industrial Comm., 31 Ariz. 224, 252 P. 512; Ocean Accident & Guar. Corp. v. Industrial Comm., 32 Ariz. 265, 257 P. 641; Federal Mut. L. Ins. Co. v. Industrial Comm., 32 Ariz. 293, 257 P. 982; Kress & Co. v. Industrial Comm., 38 Ariz. 330, 299 P. 1034. This court has, in construing the compensation act, consistently held that where there is any reasonable doubt, that construction must be adopted "which will best effect the purpose of seeing that the injured workman is reasonably compensated for the loss of his earning power caused by the injuries which he has sustained through a compensable accident." Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396, 401.

There can be no question that the 4% commission was as much a part of the wage of the deceased as the $75 which he was to be paid. The agreement, as we understand it, was for $75 plus 4% commissions. These commissions were the result of the personal efforts of the deceased, and were his earnings and wages. In the late case of Phœnix Baking Co. v. Vaught, 62 Ariz. 222, 156 P.2d 725, we laid down this rule in a tort action. The same rule applies for workmen who are engaged in an industry covered by the terms of the compensation law. The commissions here were in no sense a bonus in the nature of a gratuity or an amount allowed from the profits of the business, which might or might not be paid to the employee. It is our view, however, that whether the earnings are denominated bonus or commissions, if they are the re-

sult of the personal efforts of the employee and would be recoverable by him in an action at law, they constitute wages or earnings. Where a bonus is paid generally to employees at the end of a year, or otherwise, out of the profits of the employer's business, it does not constitute personal earnings of any particular employee. The payment in such case results from the collective efforts of those employed in the business, the management of its operation and the capital involved. Such a bonus cannot be considered in calculating the average monthly wages or earnings of employees under the terms of the compensation law. Whether an employee is employed for one month or one year, if injured while employed in a compensable occupation, he must be allowed compensation on the basis, as provided in the act, of average monthly wages or earnings at the time of the injury. Kennecott Copper Corp. v. Industrial Comm., 62 Ariz. 516, 158 P.2d 887. It would be impracticable to determine what this average monthly wage would be at the time of the injury if a bonus of the character mentioned which may or may not be paid, depending upon the profits of the business, would have to be considered in calculating such average wage.

In regarding the Kennecott-Jaime case, supra, it is apparent that the amount involved was not a bonus of the character that we have mentioned. It was additional compensation based upon the amount of work completed in any one week, and was, therefore, actual wages or earnings as defined above. In the Wells case we made the following statement: "In making the award, the commission properly eliminated the bonus being paid by the regular employer to the petitioner, applying the rule announced in Kennecott Copper Corp. v. Industrial Comm. [61 Ariz. 387], 149 P.2d 687." We were in error as to this since that case did not involve the question of "bonus," but additional compensation under a contract guaranteeing a specific wage equivalent to wages paid to employees for similar work not under contract. Nor was there any issue raised in the Wells case, on the appeal, that the bonus therein was improperly disregarded in ascertaining the basis for the award. We make this statement in order that it may be understood that neither the Kennecott-Jaime nor the Wells case can be considered as authoritative on the question of what constitutes a bonus.

As we have already stated, the award here was made by the commission under the belief that the last sentence of section 56-952, supra, controlled, and that the award would have to be limited and based upon the guaranteed monthly amount of $75. That sentence reads as follows:

"* * * If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for

such labor, then said employee or his subordinates or employees working under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether paid on a per diem or a monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract."

It is obvious that this sentence was inserted in the section for two purposes. First, to provide a definite measure of wages for a contract worker so that whether he actually earned under the contract more or less than the guaranteed amount, the amount so guaranteed, as a basis for compensation, would be equivalent to his actual average wage. Second, that no such guarantee should be effective as a basis unless it at least equaled the usual wage paid to employees for similar work not under contract. Before this section, therefore, could become effective and be enforcible, there would have to be a concurrence both of a guaranteed wage and a standard of wage paid to employees for similar work who were not being employed under contract. If the latter element does not exist, which seems to be the situation here, then no such effect can be given to the guarantee provision. There is no way to determine that the guaranteed wage will conform to the statutory measure, "but in no event shall the basis be less than the wages paid to employees for similar work not under contract." Under such circumstances, this particular statutory measure not being available, the award must be made on the actual earning capacity or wages received by the employee.

It may be urged that this interpretation of the provision as applicable to cases of this character would result in the award of less compensation to the employee, in case his contract earnings were less than the guaranteed amount. This does not follow for in such event his guaranteed wage, the amount necessarily paid to him under the contract, would be his actual wage or earnings, and constitute the average monthly wage as defined in the statute: "The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured." Section 56-952, supra. In this situation, the guaranteed wage would be the measure.

Nor does this place the employer at any disadvantage. If there is no standard of non-contract wages for similar work available as a measure, he knows that his liability will not exceed the actual wages paid, and in no event be less than the guaranteed wage.

■ Petitioner argues with much logic that the guaranteed wage in this case is not $75 per month, but the total of $75 plus the 4% commission on all sales. It appears that the actual contract was that the deceased was to receive $75 per month

plus 4% commission. The argument is that the guaranteed wage, therefore, is the total of both sums which results in the "amount" per month mentioned in the statute. The statute does not, in terms, provide for a definite ascertained amount. If, under the terms of an agreement, factors are available from which a definite ascertained amount of compensation each month can be determined, it may well be said that such amount is the guaranteed amount mentioned in the statute. Under the terms of this agreement it is apparent that if the deceased worked at all he would be entitled every month to an amount which would exceed $75 because there would have to be added to that sum 4% on all sales made by him. If the statute were applicable, that is to say, if there was a standard of "wages paid to employees for similar work not under contract" available for comparison, we would not hesitate to hold that the guaranteed amount in this case was the total sum of $75 and the commissions earned. It is evident from the provisions of the law that the "guaranteed * * * amount" mentioned means, as later used in the sentence, "the guaranteed wage." Here it is obvious that the employers and employee intended and treated the total amount of the fixed monthly sum and commissions as the guaranteed wage.

The petitioner and respondent commission have suggested to us that the sentence of the statute which we are considering is obsolete in practically all employment covered by the compensation act. It is said that the contract under consideration and most wage agreements now conform to the general contract agreements existing in industry, and which have been the result of numerous late statutory enactments. These contracts grow out of laws such as minimum wage for women and minors, and various federal acts governing relationship between employer and employee. Generally speaking, these contracts, a number of which were introduced in evidence, have as their primary purpose the establishment of a basic wage founded upon a minimum hourly rate and a limited hour week, with time and a half for overtime, and payment of wages above the minimum for skilled employees to both stimulate maximum effort and reward efficiency. It is said that these contracts are ordinarily made by union bargaining agencies, and that practically all persons employed in industry are subject to the general provisions of those agreements. They are not strictly contracts between the individual employee and the employer. The contention is that only individual contracts are contemplated in the law to which we have referred. The question of whether a class wage contract comes within the provision is not properly before us, and we cannot pass upon it.

For the reasons stated, we are of the opinion that the award in this case should

be made on the actual wages received by the employee, including both the $75 and the 4% commissions.

The award is, therefore, set aside.

· STANFORD, C. J., and LaPRADE, J., concur.