357 P.2d 327

James A. BEAMAN, Aubrey B. Barker, and
Harold Warnock, as members of and con-
stituting the Employment Security Com-
mission of Arizona, Appellants,

v.

WESTWARD HO HOTEL COMPANY, a
corporation, Appellee.

No. 6932.

Supreme Court of Arizona.

Nov. 30, 1960.

Wade Church, Atty. Gen., and Richard J. Daniels, Asst. Atty. Gen., for appellants.

Cunningham, Carson & Messinger, Phoenix, for appellee.

LESHER, Justice:

This action involves the attempt by the Employment Security Commission to collect certain contributions allegedly due from the appellee Westward Ho Hotel Company to the Unemployment Compensation Fund. The trial court held that none were due and entered judgment for the hotel. The Commission appeals.

The essential issue before the Court is whether certain payments made to employees of the hotel constitute "wages" within the meaning of A.R.S. § 23–622, which provides, in applicable part:

"A. 'Wages' means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with regulations prescribed by the commission."

The Westward Ho Hotel, in Phoenix, provides the facilities and services usually associated with a large hotel, including banquet, bar and meeting hall facilities. These

latter are available to the public for meetings and other gatherings where food and beverages are served. All such gatherings are arranged in much the same manner. A representative of the sponsoring group meets with the maitre d'hotel and agrees with him on the meal and other services to be provided by the hotel, and the price to be paid. Usually, if not indeed always, inquiry is made as to the method for rewarding the waiters who are to serve. Direct tipping is not permitted, but a "service charge" amounting to a percentage of the cost of the food to be served is added to the price agreed upon between the parties. This percentage varies and is a matter of negotiation.

The hotel employs a number of regular waiters who serve at these gatherings. When the size of the group to be served makes additional help necessary, the maitre d'hotel lets that fact be known in the community of waiters. When persons from that group appear at the time specified, those selected for duty are employed by the hotel at a wage of $1.10 per hour. A count is kept of the number of meals served. That number is then multiplied by the cost per meal. The agreed rate of tip is applied to the result of this multiplication to determine the amount of money available for distribution among the persons participating in the service of the meal. The maitre d'hotel then obtains that amount from the hotel cashier. He distributes it among the waiters, the captains, the kitchen employees and certain others who have participated in arranging for and serving the meal. The amount given to each is entirely within the discretion of the maitre d'hotel. The hotel collects the amount from the customer in accordance with the agreement between them. If, for any reason, such collection is impossible, the maitre d'hotel then attempts to recoup the money from those to whom it has been distributed by him.

In addition, the hotel is host to two private clubs, which lease space in the building. Food and drink from the hotel's kitchens and bars are served upon order to members and their guests in each of the clubs. Such service is provided by employees of the hotel, regular and extra depending upon the requirements of the club. On the instructions of the club management, a service charge of fifteen per cent is added to each check for service so provided. The hotel periodically sends its statement for its services to each club, which thereupon advances its funds in payment thereof and presumably bills its members for the amounts so advanced. The tips collected in this manner are also disbursed daily, to the individual employees, both regular and extra, providing service to the clubs' members and their guests.

It is the amounts which are collected by the hotel as service charges, and paid by it to the waiters and other employees in

**4**

addition to their regular hourly wages, that are in question here. The Commission contends that they are wages on which contributions to the Unemployment Compensation Fund must be paid. The hotel contends that they are tips from the customer to the waiters in which the hotel has no interest, serving merely as a conduit through which the money passes from the donor to the donee.

Until 1947, the Statute which defined "wages" read differently:

"'Wages' means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. *Gratuities customarily received by an individual in the course of his work from persons other than his employing unit shall be treated as wages received from his employing unit.* The reasonable cash value of remuneration in any medium other than cash, *and the reasonable amount of gratuities,* shall be estimated and determined in accordance with rules prescribed by the commission; * * *" (Italics ours.)

In 1947 the italicized parts were deleted and the section changed to read:

"A. 'Wages' means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with regulations prescribed by the commission."

The Hotel strenuously urges that the deletion of the italicized parts of the statute indicates a legislative intent to exclude gratuities, or "tips", from the definition of "wages". The Commission just as strenuously insists that the legislature intended no such thing, and points to the 1941 addition, by the legislature, of the phrase "* * from whatever source * * *", which was not in the definition before 1941. Certainly a broader definition of the term "wages" than that contained in the amendment would be hard to find. The fact is however, that we simply do not know what the legislature had in mind as to tips. Further, we are not in this case required to guess.

Whatever the payments in question here may be, they are not tips. They are not in any sense gratuitous. The patron does not control the amount, if any, to be given the one who waits on him. He does not even have anything to say about who shall share in the distribution of the money. It is common knowledge that patrons do not as a rule tip caterers, kitchen employees, secretaries and others with whom they do not come into direct contact. A tip is in law,

if not always in fact, a voluntary payment. It is not the subject of negotiation or contract, as are the "service charges" here. The payments in question here are made by the maitre d'hotel to employees of the hotel selected by him in amounts discretionary with him. They bear none of the indicia of the tip, and are not tips. We state this to make it clear that we do not in this case rule on whether ordinary tips, being gratuitous payments made by a patron at his election, in amounts which he determines, to persons of his choice, are wages on which contributions must be paid by the employer. That question is not now before us.

█ The difficulty is that while the payments here do not look like tips, neither do they look like wages as wages are generally defined. The usually significant hallmark of wages—a legal obligation in the employer to pay them—is missing. Nevertheless, under our statute's broadly inclusive language, if the payments are "remuneration for services from whatever source," then they are "wages" for this purpose.

The Federal Unemployment Tax Act (26 U.S.C.A. § 3306(b) defines wages as follows:

"For purposes of this chapter, the term 'wages' means all remuneration for employment * * *."

This definition seems no more sweeping than our own. In the case of Restaurants and Patisseries Longchamps, Inc. v. Pedrick, 52 F.Supp. 174, the United States District Court for the Southern District of New York applied it to facts similar to these. In that case the restaurant requested customers to refrain from tipping and in lieu of tips, ten per cent of the customer's check was added thereto as a service charge and part of the service charge was subsequently paid by the restaurant to the waiters. The restaurant paid its waiters a base daily wage and in addition, paid a portion of the service charge to the waiters. The Court said, begining at page 174:

"Plaintiff contends that the service charge is a 'tip' and did not constitute taxable wages within the meaning of the Federal Insurance Contributions Act, 26 U.S.C.A. Int.Rev.Code, § 1400 et seq., for the purpose of computing the tax payable by the plaintiff under that Act.

"The word 'tip' is defined in Funk & Wagnalls' New Standard Dictionary as 'a sum of money given, as to a servant usually to secure better or more prompt service.' This connotes a voluntary act. A patron in a restaurant is under no compulsion to leave a 'tip'. In the instant case the voluntary aspect is completely eliminated. The customer is requested not to do it and

the waiter would be subject to discipline if he accepted it.

"Section 402.228 of Regulations 106 provides: 'Tips or gratuities paid directly to an employee by a customer of an employer, and not accounted for by the employee to the employer' are excluded from wages for the purpose of the Federal Insurance Contributions Act.

"It seems clear, therefore, that the service charge in this case does not come within this exemption and constitutes wages for the purpose of the Act."

 In applying Arizona's generally similar statute we are, of course, guided but not directly by authority construing Federal law. This whole field of the law is relatively barren of precedent, and we must resolve such problems as arise almost entirely without its aid. We have long recognized, however, that the legislation in question is remedial in its nature. It is to be given a liberal construction to effect its purpose, that purpose being to create a fund from which the unemployed can be temporarily compensated. Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395. With this in mind, and noting that, while the payments seem in many ways unlike classic "wages", they are nevertheless surely "remuneration for employment," we hold that they are wages

within the contemplation of A.R.S. § 23-622. They are a part of the basis on which the Commission is entitled to compute and collect contributions to the Unemployment Compensation Fund.

The judgment is reversed and the trial court directed to enter judgment for the Commission.

STRUCKMEYER, C. J., and BERN-STEIN and UDALL, JJ., concur.

PHELPS, Justice (specially concurring).

I reluctantly concur in the above opinion and do so for the reason that I can find no logical escape from the conclusion reached. As it has been pointed out in the main opinion the amounts here involved bear neither the indicia of a wage nor a tip. It is clear that the Westward Ho Hotel is the employer of the waiters and waitresses who serve food and drinks to those who attend a banquet sponsored by some organization whose only connection with the hotel is by contract negotiated with it at arm's length. This is true with respect to services rendered to the two independent clubs who have space rented in the hotel and by agreement procure the services of the waiters and waitresses employed by the hotel.

It is further clear that the hotel pays its waiters and waitresses their regular compensation of $1.10 per hour while

serving the members of the clubs and their guests, as well as when serving at banquets sponsored by different organizations. Presumably this amount is included in the price of the meal charged as agreed upon between the parties. The hourly wage of those employees is not involved in this litigation. It is only that amount provided for in the contract, in lieu of tips, which concerns us here. This extra compensation to waiters and waitresses is received as a voluntary gift by the patrons and is not due as a matter of right, and so far as I know has never been considered to be or requested to be kept as a bookkeeping item. Nor in the absence of legislation would it ever be considered as an "Accountable Receipt" requiring a report thereof to any public official or officials. It constitutes neither a profit nor a loss to the hotel. It is only by the ipse dixit of the Legislature that it can under any stretch of the imagination be said to be a wage.

We have repeatedly held however, that in the absence of constitutional limitations, the power of the Legislature in its field is plenary. Therefore, when it declares that "wages means all remuneration for services *from whatever source*" the courts are without authority to hold otherwise. The above term is all inclusive. It is broader than the language deleted from the act existing prior to the 1947 amendment. Any relief for appellee rests exclusively with the Legislature.