242 So.2d 906 (1971)
Mollie DEASON, Plaintiff and Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant and Appellant.
No. 3268.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1971.
*907 Holt & Woodley by James E. Williams, Lake Charles, for defendant-appellant.
Baggett, Hawsey & McClain by William B. Baggett, Lake Charles, for plaintiff-appellee.
Before FRUGE, CULPEPPER, and MILLER, JJ.
CULPEPPER, Judge.
Plaintiff seeks workmen's compensation benefits for total and permanent disability. From an adverse judgment, the defendant insurer appealed.
The issues on appeal are: (1) Did plaintiff sustain a work-connected accident? (2) Is plaintiff's disability causally connected with such an accident? (3) Was plaintiff disabled beyond August 14, 1969, the date on which workmen's compensation payments were terminated? (4) Are the tips received by plaintiff as a waitress included in her weekly wage for purposes of computing compensation?
The facts show that the plaintiff, Mollie Deason, was employed as a waitress at the Ranch Truckstop, Inc. in Lake Charles. On September 29, 1968, she stepped on a piece of lettuce and slipped, causing her to fall in a sitting position. That same night she was taken to Lake Charles Memorial Hospital. She was seen the following day by Dr. Charles V. Hatchette, an orthopedic surgeon, who initially diagnosed an acute lumbosacral strain. This physician first prescribed conservative treatment with drugs and physiotherapy on an out-patient basis. However, plaintiff did not improve and she was admitted to the hospital on October 3, 1968 where she was treated with traction, therapy and drugs. She was discharged on October 12, 1968 but continued under treatment as an out-patient. By December 9, 1968, Dr. Hatchette said she had recovered from the lumbosacral strain. But he then found she had pain and muscle spasm due to a soft tissue injury in the cervical area.
During the next several months Dr. Hatchette saw and treated plaintiff for episodes of pain in the cervical area. On three occasions he found muscle spasm and admitted her to the hospital where she was treated with therapy and medication. Dr. Hatchette testified that on each of these occasions plaintiff apparently recovered but then would later have more trouble. *908 On August 15, 1969, he actually discharged plaintiff as having reached maximum recovery. Defendant terminated compensation as of August 14, 1969. However, plaintiff returned to Dr. Hatchette with neck complaints. He again treated and discharged her on December 9, 1969.
In early January of 1970, plaintiff again complained of pain in the cervical area. In order to determine definitely whether she had a ruptured disc in the cervical area, Dr. Hatchette referred plaintiff to Dr. John Jackson, a neurosurgeon of New Orleans. Dr. Jackson's examination was negative for neurological problems.
Then Dr. Hatchette sent plaintiff to Dr. Carl Warden, a physiotherapist, who administered a course of treatment. After this therapy was completed, Dr. Hatchette finally discharged plaintiff on April 27, 1970 as being fully recovered.
Defendant's first contention is that plaintiff failed to prove the accident. We have no difficulty rejecting this argument. Plaintiff's testimony that she slipped and fell is corroborated by her employer's first report of injury, the history which she gave to Dr. Hatchette and by Doris Luckie, plaintiff's co-employee, who testified she saw plaintiff on the floor after the fall.
The defendant insurer next contends the injury to plaintiff's neck was not caused by the accident in question but, instead, was the result of a previous incident in June of 1968 when plaintiff fell at home and struck her head either on some furniture or in the bathtub. On that occasion, plaintiff's family physician, Dr. Arthur Penton, diagnosed a cervical sprain. However, Dr. Penton treated that condition and discharged plaintiff as recovered. Following this, plaintiff went to work as a waitress for Ranch Truckstop, Inc. where she had been employed for about seven weeks at the time of the accident involved in the present case. Dr. Hatchette testified that in his opinion the cervical problem for which he treated plaintiff was caused by the accident of September 29, 1968. Viewing the evidence as a whole, we find no manifest error in the judge's conclusion that the cervical condition was caused by the work-connected accident.
Defendant's next contention is that plaintiff recovered by August 14, 1969, the date on which workmen's compensation payments were terminated. The argument here is based on the fact that Dr. Hatchette actually did discharge plaintiff as able to return to work on about that date. However, a reading of Dr. Hatchette's testimony as a whole shows that although plaintiff's continued complaints of cervical pain presented a confusing clinical picture, he was of the opinion that her complaints were genuine and she was disabled until April 27, 1970.
Defendant's final contention is that the tips, which plaintiff received as a waitress, should not be considered in computing workmen's compensation. The facts show that plaintiff's weekly salary was $32.64. She testified she also received an average of about $25 per week in tips. This testimony was corroborated by a co-worker, Mrs. Jeanette Luckie.
Malone, Louisiana Workmen's Compensation Law & Practice, Section 329, at page 447, discusses the problem as follows:
"In most jurisdictions tips received from patrons or customers are included if it appears that the receipt of such tips was fairly contemplated by the parties when they entered into the contract of employment. Apart from two unreported cases of the Orleans Court of Appeal, this question is still an open one in Louisiana."
In Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La.App.3rd Cir. 1960) we *909 considered a similar problem involving bonuses and held as follows:
"However, `In computing actual earnings as the beginning-point of wage basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, such as tips and bonuses.' 2 Larson, Workmen's Compensation Law (1952), Section 60.12. "Any money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of wages," Malone, Louisiana Workmen's Compensation (1951), Sec. 329, P. 446. Thus, the trial court properly considered bonuses as well as wages in fixing the compensation rate. See Biggs v. Libbey-Owens-Ford Glass Co., La.App. 2 Cir., 170 So. 273."
In the present case, it is apparent that plaintiff was paid a low weekly wage and it was contemplated by the employment contract that earnings would be supplemented by tips. Under the authorities cited, the tips received by plaintiff should be considered as part of her weekly earnings for purposes of computing workmen's compensation.
In her petition, plaintiff seeks penalties and attorney's fees. The district judge rejected this claim. Although plaintiff answered the appeal and asked that the district court judgment be amended to include penalties and attorney's fees, we find that in her brief filed in this court plaintiff has not argued the question and has simply requested that the trial court judgment be affirmed. Hence, we will not consider the issue.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.