533 P.2d 1166

**Carol J. SPRINGER, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Hobo Joe's Restaurant, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**Adrienne GARCIA, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Ranch Restaurant, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**Nos. 1 CA–IC 1058, 1 CA–IC 1114.**

Court of Appeals of Arizona, Division 1, Department C.

April 15, 1975.

Review Denied June 10, 1975.

**430**

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioners.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, by George B. Morse, State Compensation Fund, Tucson, for respondent employers and carrier.

## OPINION

FROEB, Judge.

■■ The court is called upon in each of these cases to review the question whether tips received by an employee should be included in the calculation of an injured claimant's average monthly wage in a workman's compensation award. We hold they should not be on the authority of Industrial Commission of Arizona v. Jordan, 9 Ariz.App. 23, 448 P.2d 895 (1968). The cases are consolidated only for the purpose of this opinion, being otherwise separate.

The facts are similar in both cases in that both Adrienne Garcia and Carol Springer were waitresses employed at relatively low base wage rates which were supplemented substantially by tips paid directly to them by the customers they served. Springer earned 90 cents per hour in wages paid by her employer. Although she earned more than $4 per day in tips, she reported only that amount to her employer. Garcia worked part-time only and was paid $1 per hour in wages by her employer. She earned $2.50 to $3 per day in tips, although she reported no tips to her employer. Springer's employment was subject to the federal minimum wage laws and a minimum wage of $1.60 per hour, whereas Garcia's employment was not subject to federal minimum wage regulation. In both cases, petitioners timely challenged the notice of claim status setting average monthly wage and the Commission's notice of average monthly wage, and sought review by this court of the decision of the Commission denying inclusion of tips in the wage computation.

Petitioners contend that we should overrule Industrial Commission of Arizona v. Jordan, supra, which construed the applicable statutory provision as excluding "tips" from the definition of "wages" in the

workman's compensation law.[1] We find nothing in petitioners' argument which persuades us to abandon the holding in *Jordan* that ". . . [A]ssessment of premiums and payment of compensation by the Commission on the basis of wages inclusive of tips is a matter requiring legislative action." 9 Ariz.App. 23, 28, 448 P.2d 895, 900 (1968).

We next turn to the contention of Petitioner Springer that factors present in her case but not present in *Jordan* are a proper basis for us to distinguish her case from the holding in *Jordan.*

First, she argues that since her wages are subject to the federal minimum wage law (Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.) of $1.60 per hour, she is entitled to a determination that her "wage" for workman's compensation purposes is equal to that amount,[2] and not merely 90 cents per hour. Her reasoning is that under the federal minimum wage law she could maintain an action against her employer for the difference between her base wage (90 cents per hour) and the minimum wage ($1.60 per hour) if the difference were not in fact made up by tips she received. We reject this argument, however, since we find that while the differential, if not made up by tips, would be recoverable against the employer, it is not "wage" paid by the employer unless he is in fact required to pay it. Since the employer was not called upon to do so in this case, it cannot be considered in computing the monthly wage.

The second factor raised by Springer involves sharing tips with restaurant busboys. Springer points out that she was required by her employer to pay over a portion of her tips for the benefit of the busboys, whose duties included cleaning tables before and after patrons were served. She argues that the "use" of a portion of her tips in this manner converts her tips in that amount to "wages" because of the employer's use and control of her money. We disagree that this constituted an addition to the employee's base "wage" within the meaning of the workman's compensation law and therefore we reject the contention.

For the reasons stated, we affirm the decision of the Industrial Commission in both cases.

WREN, J., concurs.

NELSON, Presiding Judge (dissenting).

I must dissent from the conclusion reached by the majority.

The precise question presented by these petitions was previously before the Court of Appeals in The Industrial Commission of Arizona v. Jordan, 9 Ariz.App. 23, 448 P.2d 895 (1968), and there the court ruled that tips should not be included in wages for purposes of computation of average monthly wages. It was upon the *Jordan* case that the hearing officer based the awards excluding tips from the wage calculations for the present petitioners. I would overrule *Jordan.*

To decide which of the two positions this Court ought to adopt, consideration must first be given to the general policy underlying our workmen's compensation laws. The purpose of industrial compensation is to compensate an employee for lost earning capacity, Maness v. The Industrial Commission of Arizona, 102 Ariz. 557, 434 P.2d 643 (1967); Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230

---

1. A.R.S. § 23–1041(A) reads as follows:
A. Every employee of a employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

2. The wage-tip rule set forth in the Fair Labor Standards Act, 29 U.S.C.A. § 203(m) (1966) is:
" . . . In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate . . . ."

(1951); the intention is not to make the employee whole for the loss, but to prevent him and his dependents from becoming public charges during a period of disability and to take care of the major portion of the financial loss during such a period. See Powell v. The Industrial Commission of Arizona, 104 Ariz. 257, 451 P.2d 37 (1969); Inspiration Consolidated Copper Co. v. Smith, 78 Ariz. 355, 280 P.2d 273 (1955). The workmen's compensation laws are to be liberally construed in keeping with the humanitarian and compassionate motives which caused their adoption, and they should be interpreted in favor of an injured employee. Therefore, in case of doubt or alternative or competing constructions, that construction which will best effectuate the underlying intention of compensating an injured employee for loss of earning power should be adopted. See Camis v. The Industrial Commission of Arizona, 4 Ariz.App. 312, 420 P.2d 35 (1966); Bonnin v. The Industrial Commission of Arizona, 6 Ariz.App. 317, 432 P.2d 283 (1967).

I believe that a resolution of these cases upon the above general policy considerations alone should mandate the inclusion of the amount of tips in the computation of the petitioners' average monthly wages. Certainly the waitresses here were *earning* more than $.90 and $1.00 an hour, respectively; their earning capacitites were uncontrovertedly more than this. To fix wage-loss calculations upon their base wages would result in so low an award as to not only wholly fail in the Act's purpose of taking care of the major portion of the loss during the period of injury, but to certainly fail to provide the minimum compensation necessary to protect the injured employee and any dependents from becoming public charges.

Statutorily, compensation paid for injures must be based upon wages (A.R.S. § 23–1041). Therefore, in order to conclude that tips are to be included in wage calculations, I must preliminarily find that the term "wages" does, by definition, "mean and include" tips. I believe the term to be susceptible of this interpretation.

The court in *Jordan* interpreted "wage" to mean "the wage the employee receives from the employer", and in arriving at this interpretation, the court relied upon the definition previously given "wage" in Barron v. Ambort, 64 Ariz. 209, 167 P.2d 925 (1946). The test set forth in *Barron* for determining whether earnings are "wages" was expressed by the *Jordan* court:

"It is our view, however, that whether the earnings are denominated bonus or commissions, if they are the result of the personal efforts of the employee and would be recoverable in an action at law, they constitute wages or earnings." 9 Ariz.App. at 27, 448 P.2d at 899.

Assuming this to be the proper test for determining whether earnings are a "wage", the test as applied to the facts in *Jordan* should have resulted in a contrary conclusion then and should now.

This test is two pronged: (1) the earnings must be the result of the personal efforts of the employee; and (2) they must be arguably recoverable by the employee in an action at law. The first requirement is obviously met in both the present factual setting and in *Jordan*. The presence of the second requirement, however, is not so obvious.

Tips would not be recoverable in an action at law by the employee from the employer in a situation where, for example, the employee provides customers with poor service to which they respond by declining to leave a tip. The absence of the first element of the test would then have resulted in the absence of the second, i. e., the lack of personal effort on the part of the employee resulted in no tips. However, looking at tips from an employment contract viewpoint, tips may, in fact, be recoverable in an action at law. If the employer and employee, in their negotiations of terms of the employment contract, agreed to and contemplated that the employee would keep all or a certain portion of tips received, in addition to the base wage paid directly by

the employer, the employer would be in breach of the employment contract if he confiscated those tips or demanded relinquishment of a larger portion than that agreed upon. For this breach of contract an action at law would lie against the employer. Consequently, the touchstone is, I believe, whether the contracting parties contemplated that tips would be part of the employee's remuneration. See also: Fair Labor Standards Act of 1938 (as amended), 29 U.S.C. § 201 et seq., supra. It is this distinction which the courts of other states have recognized, and it is the distinction upon which must be based the determination of whether, in a particular employment situation, tips are wages as defined in *Barron*. There would, of course, be employment situations where tips were not contemplated by the parties to be part of wages, and in such instances they would be excluded from wage calculations. Int. Rev.Code of 1954, § 3401(f); I.R.S.Regs. § 31.3401(a)–1; 7 CCH 1975 Stand.Fed.Tax Rep. ¶¶ 4932, 4933, 4934.146.

A review of the case law of other states having workmen's compensation laws both similar to and different in some respects from the relevant Arizona statutes (A.R.S. § 23–901 et seq.) reveals that only a few courts have considered the precise issue here involved, while many other states have avoided the question by use of specific statutory language either including or excluding tips from wage calculations. In those states where the statutory language does not settle the question, the courts have fairly uniformly decided that tips should be included in wage calculations. While the decisions of other states certainly do not bind the courts of this state in matters involving workmen's compensation, their reasoning is helpful in resolving the issues herein.

The Tennessee Supreme Court in Bryson v. Benton, 217 Tenn. 116, 395 S.W.2d 794 (1965), thoroughly discussed the case law of the various jurisdictions which had dealt with this issue up to that time. While much language in the decision is worthy of note, the following language is very instructive as to how employment contracts of these types are negotiated and agreed to:

". . . The employer, in the case *sub judice*, operated a Holiday Inn Restaurant, consisting of two areas for the service of food to the public, one called the Dining Room and the other the Coffee Shop. In employing waitresses the employer had set the scale in the Dining Room at 50 cents per hour and in the Coffee Shop at 75 cents per hour. The employer explained the difference in the pay scale was due to the fact a waitress in the Dining Room would earn more in tips than one in the Coffee Shop, and such was the understanding of the waitresses. The employee testified she was hired at 50 cents per hour and told she could keep her tips, which she considered as a part of the inducement for her to work. The only reasonable inference we can draw from this evidence is both the employer and employee treated the tips to be received by employee as a part of the inducement for her to work . . . ." 395 S.W.2d at 797.

Subsequent to both the Tennessee decision and Jordan, supra, Deason v. Travelers Ins. Co., 242 So.2d 906 (La.App.1971) was decided. The court therein reasoned:

"Defendant's final contention is that the tips, which plaintiff received as a waitress, should not be considered in computing workmen's compensation. The facts show that plaintiff's weekly salary was $32.64. She testified she also received an average of about $25 per week in tips. This testimony was corroborated by a co-worker, Mrs. Jeanette Luckie.

"Malone, Louisiana Workmen's Compensation Law & Practice, Section 329, at page 447, discusses the problem as follows:

'In most jurisdictions tips received from patrons or customers are included if it *appears that the receipt of such tips was fairly contemplated by the parties when they entered into the*

*contract of employment.* Apart from two unreported cases of the Orleans Court of Appeal, this question is still an open one in Louisiana.'

"In Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La.App. 3rd Cir. 1960) we considered a similar problem involving bonuses and held as follows:

'However, "In computing actual earnings as the beginning-point of wage basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, such as tips and bonuses." 2 Larson, Workmen's Compensation Law (1952), Section 60.12. "Any money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of wages," Malone, Louisiana Workmen's Compensation (1951), Sec. 329, P. 446. Thus, the trial court properly considered bonuses as well as wages in fixing the compensation rate. See Biggs v. Libbey-Owens-Ford Glass Co., La.App. 2 Cir., 170 So. 273.'

*"In the present case, it is apparent that plaintiff was paid a low weekly wage and it was contemplated by the employment contract that earnings would be supplemented by tips. Under the authorities cited, the tips received by plaintiff should be considered as part of her weekly earnings for purposes of computing workmen's compensation."* 242 So. 2d 906 at 908. (Emphasis added.)

Last year, in Employers Commercial Union Ins. Co. v. Bryant, 130 Ga.App. 596, 203 S.E.2d 896 (1974), the Georgia court also considered the problem and came to the conclusion that tips must be included in wages for computing workmen's compensation benefits.

The weight of authority thus leans heavily toward inclusion of tips in wage computa-

tations in factual circumstances such as we have here.

The court in *Jordan* relied on several points in determining legislative intent on the tips issue. It considered the argument that the Employment Security Act was to be read *in pari materia* with the Workmen's Compensation Act, which if so read, required an exclusion of tips from wages because a 1947 amendment to the Employment Security Act deleted specific language relating to "gratuities" from the Act's definition of "wages."[1] In commenting on this argument, the court said:

"Although we decline to express an opinion with reference to whether the Workmen's Compensation Act and the Employment Security Act are to be read in pari-materia, we do find it significant that the deletion of gratuities from the Employment Security Act's definition of 'wages' was effectuated by legislative action and not by administrative regulation, as in this instance. It is our opinion that assessment of premiums and payment of compensation by the Commission on the basis of wages inclusive of tips is a matter requiring legislative action." 9 Ariz.App. at 28, 448 P.2d at 900.

Although clearly dicta in *Jordan,* supra, the reference to the Employment Security Act therein appears to strengthen the court's conclusion. I believe it weakens it.

The court observed that the deletion of "gratuities" from the Act's definition of "wages" was accomplished by legislative action, not administrative action, much the less, judicial interpretation. While this specific conclusion was, of course, correct, I do not believe the result in *Jordan* necessarily followed therefrom. The deletion of the reference to "gratuities" in the definition of "wages" merely changed the wording of the definition; it did not change the substance of what constituted "wages" under the Act so as to exclude gratuities. The scope of "wages" was not, in fact, narrowed, rather it was *broadened.* As

---

1. Laws 1947, Ch. 77, § 14.

stated by Justice Phelps in his special concurring opinion in Beaman v. Westward Ho Hotel Co., 89 Ariz. 1, 357 P.2d 327, 83 A.L.R.2d 1018 (1960), relied upon so heavily by the court in *Jordan*:

> "We have repeatedly held however, that in the absence of constitutional limitations, the power of the Legislature in its field is plenary. Therefore, when it declares that 'wages means all remuneration for services *from whatever source*' the courts are without authority to hold otherwise. The above term is all inclusive. *It is broader than the language deleted from the act existing prior to the 1947 amendment.* Any relief for appellee rests exclusively with the Legislature." 89 Ariz. at 7, 357 P.2d at 331. (Second emphasis supplied.)

If the deletion in fact made the scope of "wages" broader in the Employment Security Act, and that Act and the Workmen's Compensation Act are to be read *in pari materia,* then the exact opposite conclusion would follow. Tips should be included in wages under both Acts.

Also, if these two Acts were to be read *in pari materia,* the language of the court in Gaskin v. Wayland, 61 Ariz. 291, 295, 148 P.2d 590, 591 (1944), would be indicative of a general philosophical approach to be taken in interpreting the Acts:

> "An examination of the pertinent definitions in the Unemployment Compensation Act make it readily apparent that such words as . . . 'wages' . . . when used in the Act, are not used as words of art having rigid, precise and restricted meanings, but rather, as defined by the Act itself, are used as broad terms of description, evidencing a legislative intent to give to the Act a broad and liberal coverage to the end that the far-reaching effects of unemployment may be alleviated."

Accord, Unemployment Comp. Comm. v. Jefferson Standard Life Ins. Co., 215 N.C. 479, 2 S.E.2d 584 (1939).

*Jordan* further based its conclusion that the legislature intended to exclude tips from wages on an analysis of certain statutory sections of the Workmen's Compensation Act read as a whole. Its analysis followed this sequence: A.R.S. § 23–1003, Repealed, Laws 1968, 4th S.S., Ch. 6, § 73, relating to semi-annual adjustment of premiums, spoke in terms of wage expenditure, but also referred to "the amount paid by him" (the employer). A.R.S. § 23–965, Repealed, Laws 1968, 4th S.S., Ch. 6, § 73, related to the lien of the State Compensation Fund against interests of the employer who defaulted on premium payments and spoke in terms of the employer's "payroll." A.R.S. § 23–926 refers to "All books, records and payrolls of the employer showing or reflecting in any way the wage expenditure of the employer." And A.R.S. § 23–984 refers to "the amount of payroll upon which the premium for workmen's compensation insurance to be paid to the insurance carrier is based . . . ." After setting forth the above-listed statutory provisions, the court said:

> "Each of the foregoing provisions indicates a legislative intent that the assessment of workmen's compensation premiums is to be based on wage expenditures or the payroll of the employer, and not on gratuities received by employees from patrons of the employer." 9 Ariz.App. at 28, 448 P.2d at 900.

I believe those sections are, at the very least, susceptible of an interpretation in support of either position. The term "payroll", as commonly understood, does mean only the amount of money flowing from the employer directly and would not include tips. However, "payroll" is not the dispositive term here, and A.R.S. § 23–926 implies that payroll may not be the only component part of an employer's "wage expenditure." In referring to "all books, records and payrolls of the employer showing or reflecting in any way the wage expenditure of the employer" the legislature is indicating that "wages" is the critical term and payroll is not the only element, if other books and records reveal other items which entered into the wage expenditure besides payroll.

The language of A.R.S. § 23–926 does raise an issue which I believe to be of utmost importance if tips are to be construed as being within the definition of "wages" or "wage expenditures" of the employer. The issue really goes to the question of administrative feasibility, though the language of A.R.S. § 23–926 does give a statutory basis for the approach I deem proper here. Respondents have warned of an administrative nightmare which could result from a holding that wages include tips. In view of the numerous regulations of the Internal Revenue Service requiring employers to keep records on tips in most of the instances we would here be concerned with, I.R.S.Regs. § 31.3401(a)–1, supra, this danger appears more illusory than real.

Secondarily, this conclusion is based upon the wording of A.R.S. § 23–926. That section already places upon an employer the duty of keeping accurate records of "wage expenditures", and under a reasonable view of the meaning of this term, includes records of tips earned by the employee.

Requiring that a regular record of the tips exist before a wage can be found to include tips is similar to the approach taken in New Jersey where by statute tips are included only if regular records are kept. See Burpee v. Princeton Municipal Improvement Co., 88 N.J.Super. 552, 213 A.2d 22 (1965).

I would hold that wages under the Workmen's Compensation Act may include tips, when those tips are contemplated by the parties to the employment contract to be a part of the employee's remuneration for services performed, and when a proper record of such tips is kept by the employer in the regular course of his business. Such records would form a basis for both the premiums to be assessed him and for the claim by an injured employee that his wage was actually higher than the base wage paid directly to him by the employer. An employer could not, of course, avoid liability by deliberately failing to keep the records contemplated by both the statute and my view, any more than an employer or employee can avoid federal income and withholding tax liability by failing to keep records required by the I.R.S.

Finally, I would consider the effect of this decision as it pertains to the insurers who actually pay the workmen's compensation benefits. Clearly workmen's compensation must be based on sound insurance and actuarial principles. Cf. Wisconsin Comp. Rating and Inspection Bureau v. Mortensen, 227 Wis. 335, 277 N.W. 679 (1938). These principles would be upset if a retroactive effect were to be given my views in this case. Therefore, pursuant to Hollywood Continental Films v. The Industrial Commission of Arizona, 19 Ariz. App. 234, 506 P.2d 274 (1973), I would make the overruling of *Jordan,* supra, prospective only.

While I concur with Justice Struckmeyer's recent comment about stare decisis contained in Goldman v. Kautz, 111 Ariz. 431, 531 P.2d 1138 (1975), it appears to me there are ample reasons to overrule *Jordan* in 1975.

The award should be set aside and I respectfully dissent.